## MUNGER et al. v. MUNGER et al.
### (No. 9903.)

Court of Civil Appeals of Texas. Dallas.
May 8, 1927.

Rehearing Denied Oct. 15, 1927.

**1. Wills ⊂⊃866—Where corpus of trust estate is not fixed in any one by will, it vests in testator's heirs (Rev. St. 1925, art. 3314).**

Where the corpus of a trust created under a will is not fixed in any one by the will, it vests in the testator's heirs, under Rev. St. 1925, art. 3314, providing that all estate not devised or bequeathed by person leaving will shall vest immediately in his heirs at law.

**2. Wills ⊂⊃687(2)—Under will providing that after death of testator's daughters trust estate goes to their issue, on death of last daughter trustees' title ceases and vests in issue.**

Under will creating trust estate with income to go to daughters, and providing that on the death of any daughter leaving issue the daughter's proportionate share should pass to her issue, and that all testator's property was to be ultimately divided among the daughters' issue, such title as the trustees take under the will ceases on the death of the last daughter and vests in the several issue of the several daughters.

**3. Wills ⊂⊃692, 693(1)—Powers given executors as trustees to reinvest, partition, and convey estate held to imply investiture of legal title.**

Where will appoints executors as trustees, powers given the trustees to sell estate for reinvestment, and to partition and convey in fee to devisees under the will, and to ultimately divide the estate among the issue of testator's daughters, held to imply as a condition precedent the investiture of legal title.

**4. Perpetuities ⊂⊃4(15)—Where will does not vest title to trust estate during lives in being and within 21 years 10 months, trust is void.**

Where a will creating a trust estate does not vest the title to the trust estate during the life or lives in being at the death of testator and within 21 years and 10 months thereafter, the trust is void, as against public policy, without regard to testator's intention.

**5. Wills ⊂⊃775—Under will creating trust, income to go to daughters for life and corpus to their issue on daughters' deaths, where daughters die without issue, legacy lapses.**

Under a will creating a trust, the income to go testator's daughters for life and the corpus to the issue or surviving issue of the daughters, where the daughters die without leaving any issue, the legacy lapses.

**6. Wills ⊂⊃849—Lapsed legacy is treated as intestate estate.**

Where a legacy lapses for any reason, the portion of the estate involved will be treated as intestate.

**7. Wills ⊂⊃671—Provisions in will creating trust, if doubtful, will be interpretated to uphold, rather than destroy, trust.**

Where provisions in a will creating a trust are of doubtful meaning, courts will interpret them to uphold the trust, if possible, rather than to destroy it.

**8. Perpetuities ⊂⊃4(15)—Trust giving income to daughters for life and corpus to surviving issue of each held not to violate rule against perpetuities.**

Provisions in will creating trust, the income of which was to go to daughters for life, and on the death of each daughter her proportionate share of the corpus to go to the issue of such daughter, and after the death of all the daughters the whole estate to be divided among the issue of testator's daughters who had not yet received their share, held not to violate rule against perpetuities.

**9. Wills ⊂⊃802(1)—Wife's rejection of will and taking half community property held not to affect rights of others under will, nor defeat testator's dominant purpose that income should go to daughters and corpus to their issue.**

Where testator requested wife to accept will creating trust giving her income from whole estate for life, then providing that the income should go to daughters, then the corpus to issue of daughters, wife's rejection of the will and claiming her half of the community property held not to affect rights of others under the will, nor defeat testator's dominant purpose that the income should go to the daughters and the corpus of the estate to their issue.

**10. Wills ⊂⊃802(1)—Where widow claimed community property rights, testator's will, disposing of entire estate, could only operate against half.**

Where testator disposed of whole estate, including community property, but wife rejected the will and claimed her community property rights, the will could only operate on half of the estate.

**11. Wills ⊂⊃802(4)—Wife's rejection of will held equivalent to death, as respected payments to daughters, who, under will, were to receive income after wife's death.**

Where testator disposed of estate, including community property, income to go to wife for life and then to daughters, the wife's rejection of the will and claim to her community property;

rights *held* equivalent to her death, as respected payments of the income to the daughters; such payments being accelerated by wife's rejection.

**12. Wills ⚫⟷471—Minor or subsidiary provisions in will must yield to testator's dominant purpose.**

All minor or subsidiary provisions of a will, even if conflicting with the major purpose, must yield to testator's dominant intention.

**13. Judgment ⚫⟷715(2)—Decree, after wife rejected will, that trustees should execute will as if wife was dead, held adjudication, binding in subsequent case, that rejection did not defeat testamentary scheme.**

Decree, after wife rejected will, that the trustees should execute the will as if the wife was dead, *held* an adjudication that the rejection of the will did not defeat the testamentary scheme, and that the will remained valid, which adjudication was binding in a subsequent case brought by the executors to interpret the will.

**14. Wills ⚫⟷498—"Issue" and "surviving issue" held to mean descendants, where nothing on face of will showed narrower meaning was intended.**

The words "issue" and "surviving issue," as used in will, *held* to embrace all descendants, where nothing on the face of the will showed that the testator intended a narrower meaning, and construing them to mean children *held* error.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Issue.]

Appeal from District Court, Dallas County; Royal R. Walkins, Judge.

Suit by Roy Munger, and another, as executors and trustees under the will of J. B. Wilson, deceased, and Mable Wilson Richards and others, against Le Roy Munger, Jr., and others. Judgment for defendants and plaintiffs appeal. Modified, and, as modified, affirmed.

Spence, Smithdeal, Shook & Spence, of Dallas, for appellants.

Sawnie R. Aldredge and Flanary & Aldredge, all of Dallas, for appellees.

LOONEY, J. This suit was brought by Roy Munger and J. Fred Schoellkopf, executors and trustees under the will of J. B. Wilson, deceased, and Mabel Wilson Richards, Fay Wilson Munger, Bess Wilson Schoellkopf, Lucile Wilson Pattullo, and Geraldine Wilson Knight, surviving children and only heirs at law of the testator—all except Geraldine Wilson Knight, a widow, were joined by their respective husbands—against Le Roy Munger, Jr., Jack Munger, J. Fred Schoellkopf, Jr., and Wilson Schoellkopf, grandchildren of testator. The last three are minors and were represented by Sawnie Aldredge, Esq., a practicing attorney of Dallas, as guardian ad litem. The suit was brought for the purpose of obtaining an interpretation of the will of Mr. Wilson.

The children of testator are contending that the will did not vest title to the estate in any one, consequently they are entitled to it as heirs at law under the statute of descent and distribution. Based on this conception of the will, they prayed that the estate be decreed to them and for partition among themselves.

On January 27, 1920, J. B. Wilson died testate, leaving a widow, Mrs. Laura D. Wilson, the five daughters and the four grandchildren above mentioned.

The first six items of his will are omitted, as they relate to the payment of debts and certain cash legacies that are not material here. The items of the will brought under review are as follows:

"Item 7. I give and bequeath to my beloved wife, Laura D. Wilson, for the term of her life, the net income of all the residue of my estate, both real and personal, after the payment of all my debts and the legacies herein given and the expenses of administration of my estate as herein provided. All of the property held or owned by me, including community property as well as separate property, to be held and controlled by my executors and trustees hereinafter named, and the net income, as aforesaid, to be paid, from time to time, to my said wife during her lifetime. And my said wife is requested to accept this bequest in lieu of all rights and share in the community property, and of all rights in my estate. My wife shall also hold, for her life, any residence homestead property I may own at the time of my death, or any residence homestead property that may thereafter be acquired for that purpose by my executors or trustees.

"Item. 8. I hereby appoint, as independent executors of my will, and also as trustees hereunder, my wife, Laura D. Wilson, my brother F. P. Wilson, my son-in-law, J. Fred Schoellkopf, my son-in-law Roy Munger, and my friend J. Howard Ardrey, all of Dallas, Texas. In case of the death, disability or refusal to act, of any of said executors or trustees, then the remaining executors or trustees shall act with the same powers as are given to the five. But if, for any reason, the number of trustees shall be reduced to less than three, then such trustees so remaining shall appoint in writing such other person or persons as they may see fit to act as trustees hereunder; so that the number of acting trustees shall at all times be as large as three. And any one so appointed shall have the same power, including the like power of appointment, as given to those herein named. In case of any difference in opinion among the executors or trustees, the majority shall control.

"Item 9. No bond or other security shall be required of my executors or trustees herein named. No other action shall be had in the probate court in relation to the settlement of my estate than the probating and recording of this will, and the return of an inventory, appraisement and list of claims of my estate. In case of the appointment of other trustees, as herein provided, such other trustees appointed shall give bond, with good security, in the sum of not less than fifty thousand dollars each, as

may be required by the trustees so appointing them.

"Item 10. After the death of my wife, Laura D. Wilson, I give and bequeath to my children, share and share alike, for the term of their respective lives, the net income of all of my estate then remaining, both real and personal, such estate to include all property, whether community or separate held or owned by me. All of such property is to be held and controlled by my executors and trustees herein named or provided for, and the net income, as aforesaid, is to be paid, from time to time, to my said children, share and share alike, during their respective lives. In case of the death of any of my said children without issue at the time of such death, then the share of such child in said income shall be prorated among my surviving children.

"Item 11. Upon the death of any of my children, leaving issue, then the proportionate share of such child, so dying, shall pass in fee simple and absolutely to the surviving issue of such child; so that the surviving issue of my said children shall take such shares of my estate as such child would have inherited if I had left no will. And it is intended that all of the property, held or owned by me, whether community property or separate property, shall so pass in the same way; to be ultimately divided among the several issue of my several children; the issue of each child taking the share of such child.

"Item 12. I direct that my executors and trustees keep intact, at all times, until the distribution of my estate to the issue of my said children, all of my business real estate in the city of Dallas, and including all my real estate in the city of Dallas, save my residence homestead property. The said executors and trustees may improve such business property as they deem proper, but the same is not to be sold by such executors and trustees; but the income thereof shall be distributed as directed in this will. I do not designate or claim any property as a business homestead.

"Item 13. My executors and trustees may sell or exchange, on such terms as they may see fit, any property, real or personal, except the said business property in the city of Dallas; and may reinvest the proceeds in any other property, with like power of disposal as to such property so acquired. My executors and trustees shall so control, manage or improve any property of my estate, as that it may become and continue revenue producing property.

"Item 14. Upon the death of any of my children, leaving issue, the trustees shall partition and set apart to the issue of such deceased child, out of any property, real or personal, the proper share of any estate coming to such issue of such deceased child. And when such share shall be so set apart to the issue of such deceased child, by proper instrument executed by the trustees, the remainder of my estate shall be held by the trustees, for the benefit of the other beneficiaries under this will, free and clear of all claims on the part of such issue of such deceased child."

Roy Munger, J. Fred Schoellkopf, and F. P. Wilson qualified as executors and trustees and took possession of all property belonging to the estate. Mrs. Laura D. Wilson and J. Howard Ardrey declined to serve. On August 4, 1923, F. P. Wilson died, and R. E. L. Knight, Jr., husband of Geraldine Wilson Knight, was appointed by the remaining original trustees to fill this vacancy, and acted as one of the trustees until his death, on April 1, 1926. Since that time only two trustees, Munger and Schoellkopf, have been acting.

The community estate of testator and his wife, Mrs. Laura D. Wilson, at the time of his death, was of the value of $7,389,084.90. The business property in the city of Dallas mentioned in items 12 and 13 of the will was appraised at $2,343,287.50.

The will was admitted to probate on March 2, 1920, but Mrs. Wilson renounced the same, asserted her community rights, and brought suit in the district court of Dallas county for partition against all the parties to this suit, both plaintiffs and defendants. The estate was legally partitioned, in which the court set apart and decreed to Mrs. Wilson, among other, all the business property mentioned above.

On April 19, 1920, the executors and trustees brought suit in the district court of Dallas county to obtain an interpretation of the will, as to the disposition they should make of the income from the half of the estate set aside to them as executors and trustees in the partition suit.

The five daughters, their husbands, and the grandchildren of testator were defendants in said suit, the minors were properly in court and represented by a guardian ad litem. On July 1, 1920, the district court entered its decree to this effect: That plaintiffs, the executors and trustees and their successors, should execute and carry into effect the provisions of the will as though the widow, Mrs. Laura D. Wilson, were dead, and dispose of the income as the will directed should be done after her death.

The executors and trustees have accordingly retained possession of the half of the community estate set apart to the J. B. Wilson estate in the partition, and have distributed the income therefrom as it accumulated in equal portions to the daughters of testator. The case was tried without a jury and resulted in judgment to the effect that plaintiffs take nothing.

The court construed the will to this effect: That it created a valid trust estate; that the trustees and their successors are entitled to its possession and control and shall pay the net income to the children of testator, share and share alike, during their respective lives; that upon the death of a daughter without issue the corpus of the estate will remain undisturbed and the income will thereafter be paid to the daughters surviving; that upon the death of a daughter leaving issue a preliminary partition or diminution of the corpus of the trust estate shall take place, that is, in such event, the proportion-

ate part of the estate that the deceased daughter would have inherited if testator had left no will (being one-fifth) is to be set apart by the trustees to the surviving issue of such daughter in fee simple, the remainder of the trust estate to continue in the possession and control of the trustees, and the net income is to be paid to the living daughters freed from any claim by the issue of such deceased daughter during the life of the trust; that the trust will end on the death of the last daughter of testator, at which time the final distribution of the corpus of the estate, remaining, shall be made, per stirpes, among the several issue of said several daughters; that the words "issue" and "surviving issue," as used in the will and in the court's findings and conclusions, mean children of the daughters of the testator, and, finally, the court concluded that plaintiffs did not own the property as heirs at law of testator, and were not entitled to a partition; that their only interest in the estate was to participate in the distribution of the income as hereinbefore outlined.

Appellants excepted to the conclusions and judgment of the court, and, by appropriate assignments and propositions are contending that the estate of testator descended and vested in them as heirs at law, in that it was not disposed of by the will, for the following reasons: (1) Because the legal title to the property was not devised or bequeathed to the trustees, nor was the beneficial interest or title bequeathed or devised to any one; (2) because the trust violates the rule against perpetuities, and is therefore void, in that no provision is made for its termination in the event all the children of testator should die without issue surviving; (3) because the renunciation of the will by the widow of testator, and the partitioning of the community estate, defeated the purpose of testator to have the business real estate kept unsold and intact until the distribution thereof should take place as provided in the will, and the acceleration of income to the children from half of the estate altogether resulted in destroying the testamentary scheme and rendered other parts of the will inoperative (except as to special legacies).

Appellants say further that, if they should be mistaken in the above, the will should be construed so as to limit the interest the surviving issue of a deceased daughter may take to such share of the estate as said daughter would have taken if her father had left no will, because the will fails to provide for a gift over to any one of the share of any daughter who may die without issue; hence the same would descend and vest in her heirs.

We will not attempt a detailed analysis of the will, but will simply state our conclusions in a general way from its language and provisions. We believe it is perfectly apparent that Mr. Wilson intended to devise and bequeath his entire estate, income, and corpus. No controversy has arisen in regard to the provisions of the will disposing of the income. The dispute is confined to the provisions relating to the disposition of the corpus of the estate.

[1] Our understanding of the law is that, if for any reason title to the corpus of this estate was not vested by the will in the devisees and legatees, the same vested in the daughters of testator, as heirs, by operation of the statute.

Article 3314 (3235) (1869) (1817), Rev. St. 1925, provides:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law, * * *" etc.

It is apparent to us that the testator did not intend to vest title to the corpus, or any part of it, in either his wife or daughters, nor did he intend to vest title to a share in the issue of a daughter until at her death, nor did he intend that title to the estate remaining undivided should vest in the several issue of his several daughters until the death of the last daughter.

[2, 3] While the will contains no express language vesting title to the corpus of the estate in the trustees, we are of the opinion, nevertheless, that it was the intention of testator to vest them with title for the purposes of the will. They took no beneficial interest, and such title or interest as they did take will cease to exist as to one-fifth of the estate on the death of a daughter leaving issue, in whom the title will then vest, and, as to the estate remaining on the death of the last daughter, title will vest in the several issue of the several daughters.

In addition to other duties devolved and powers conferred, the trustees were authorized to sell or exchange any property, real or personal (except the Dallas business property), to reinvest the proceeds of sales in other property, with like power to dispose of property thus acquired. On the death of a daughter leaving issue, the trustees were directed to immediately partition and set off to such issue, by proper instrument conveying absolute title, such share of the estate as the deceased daughter would have inherited from her father if he had died intestate and ultimately, at the death of the last daughter, the trustees are directed to make final partition of the corpus of the estate not theretofore partitioned under the other provision of the will, among the several issue of the several daughters.

The power given the trustees to sell for reinvestment, and the power given to partition and set off to issue by proper instrument passing absolute title in fee, and the

power of ultimate division among the several issue of the several daughters, implied as a condition precedent the investiture of legal title; in fact, the designation of the executors as also trustees, in connection with the powers and duties conferred, can have no other meaning.

In Dulin v. Moore, 96 Tex. 135, 138, 70 S. W. 742, 743, Judge Gaines for the Supreme Court said:

"One to whom is given a naked power is known in law as the donee and not as a trustee. The latter word implies an investiture of the legal title. Besides this, the tenth clause [of the will then under consideration] empowers Dulin to sell the property for reinvestment."

The court quotes from Potter v. Couch, 141 U. S. 296, 11 S. Ct. 1005, 35 L. Ed. 721, language from Kirkland v. Cox, 94 Ill. 415, as follows:

"The power implied to sell is to sell the whole title, and to this is essential the power to convey that title, requiring, as a condition precedent, a fee-simple estate in the trustees."

After this quotation, Judge Gaines proceeded:

"The proposition as applied in that case seems to us sound. Where an estate is conveyed to a trustee, it would appear that in determining the quality of the estate a power to convey the property indicates that the purpose was to invest him with the legal title." Page 139, 70 S. W. 743.

In the case of McHatton v. Peale (Tex. Civ. App.) 248 S. W. 103 (106), independent executors were given power to sell, exchange, or otherwise alienate property for the benefit of the estate. Referring to this language, the court said:

"These are the things usually performed by a trustee and are necessarily the basis for the holding that title to the property not otherwise disposed of by the will vested in fee in the named executors as trustees, but in trust for the son and daughter until such time as they might decide to distribute it."

Other cases in point are Patten v. Herring, 9 Tex. Civ. App. 640, 29 S. W. 388; Thornton v. Zea, 22 Tex. Civ. App. 509, 55 S. W. 798 (800); Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129.

We therefore hold that the trustees were vested with title by the will for all purposes necessary to execute the trust.

2. The proposition of appellants that the trust estate created by the will is void because it is in violation of the rule against perpetuities, is based on the contention that, even if the legal title was vested in the trustees by the will, no provision is made to terminate the trust, unless all the children of testator should die leaving issue, and, if a child or children should die without issue, the trust may be continued indefinitely.

[4] If this contention is correct, that is, if the will makes no provision for vesting title during the life or lives in being at the death of testator and within 21 years and 10 months thereafter, if, in fact, it may be continued indefinitely, or forever, as contended by appellants, the trust would be void as against public policy, and this without regard to the intention of testator.

But is the will subject to this criticism? We do not think so. We are of the opinion, as indicated above, that the trust will end definitely at the death of the last of the daughters of the testator to die, and, on such occurrence, the corpus of the estate not theretofore vested, at the death of daughters leaving issue, will immediately vest in the several issue of the several daughters. As we view the matter, this trust cannot exist longer than the lives of persons in being at the death of the testator.

[5, 6] Appellants forcefully combat this idea, and ask:

"Who will take the property in the event all of J. B. Wilson's children die without issue; that is, will it go to the heirs of J. B. Wilson, or to the heirs of J. B. Wilson's children, or to the heirs of J. B. Wilson's grandchildren?"

If this contingency should ever arise—that is, if all the daughters of Mr. Wilson should die without issue surviving—we would have the case of a lapsed legacy. If for any reason a devise or legacy never vests in the donee, under the terms of the will, the legacy lapses and the estate, or the portion thereof involved, will be treated as intestate and disposed of under the rules of law controlling such a situation. 2 Schouler on Wills, p. 1543, § 1467.

[7, 8] The provisions of the will now under consideration are not in our opinion of doubtful meaning, but, if they should be so considered, it would be our plain duty to give to them such interpretation, guided by applicable rules of course, as would uphold, rather than destroy, the trust. Neely v. Brogden (Tex. Com. App.) 239 S. W. 192 (193). We overrule the contention that the provisions of the will offend the rule against perpetuities.

[9, 10] 3. Did the renunciation of the will by the widow result in destroying the testamentary scheme and render inoperative other provisions of the will?

This position of appellants is based on the idea that the defeat of the purpose of the testator to have the business property held intact until required to be partitioned on the death of a daughter leaving issue and the defeat of his purpose to have the daughters receive all the income from the estate from and after the death of the widow destroyed his testamentary scheme and rendered other parts of the will inoperative.

The testator knew his wife owned an un-

divided half of this property and that she could demand a partition of the community estate, notwithstanding the provisions of the will. With this in mind, he wrote in item 7 the following:

"And my said wife is requested to accept this bequest in lieu of all rights and share in the community property and of all rights in my estate."

In view of his knowledge as to her rights and this request. it is significant as bearing on the question under consideration, that testator made no alternative provision in case his wife refused to take the bequest in lieu of her legal rights.

His right to dispose of the entire estate was necessarily qualified by the right of his wife to take against the will and when she did the will could only operate on the half of the estate. Her rejection, however, could not affect the rights of other legatees and devisees. The dominant intention of the testator, after satisfying other provisions of the will, was that the corpus of the estate should go to the issue of his daughters. This intention should be carried out as far as may be.

[11] The acceleration of income to the daughters from the remaining half of the estate resulted naturally from the action of the widow in rejecting the will and should have been anticipated, for her election against the will was in law equivalent to her death, as respects the payment of income to the daughters. 28 R. C. L. p. 33, § 323.

The case of Jones v. Dorchester (Tex. Civ. App.) 224 S. W. 596, is a stronger case on the facts than the one at bar. The testator in that case intended to leave $300,000 for the erection of a hospital in the city of Sherman. His wife agreed in advance to abide by the terms of the will, but repented and claimed half of the community estate, which reduced the fund available for the establishment of a hospital to less than $100,000. On the question as to whether this change destroyed the testamentary scheme, the court said:

"While this may be true, and while a hospital costing less than $100,000 would not be as imposing a monument to his memory as one costing three times that sum, the court would not be warranted for that reason to declare that the trust had failed because the intent of the testator could not be literally carried into effect.

"It would still be the duty of the court to give effect to the desire of the testator specifically declared, in so far as the funds left in the hands of the trustees would permit, and this the courts have almost universally done under the cy pres doctrine."

Other authorities in point: Grant v. Stephens (Tex. Civ. App.) 200 S. W. 893 (896); Lilly v. Menke, 126 Mo. 190, 28 S. W.

643, 648, 994; Dunshee v Dunshee, 251 Ill. 405, 96 N. E. 298; 4 Schouler on Wills, §§ 3211, 3212.

[12] The purposes of the testator that were defeated by the election of Mrs. Wilson are minor and altogether subsidiary to the larger purpose manifested by him to leave his entire estate (his wife's interest aside) to his descendants, the income to his daughters during their respective lives, and the corpus to their surviving issue. It follows, therefore, that all mere minor or subsidiary provisions of the will, even if found in conflict with the major purpose, must yield to the dominant intention. McMurry v. Stanley, 69 Tex. 327, 6 S. W. 412; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; Norton v. Smith (Tex. Civ. App.) 227 S. W. 542 (546).

[13] Moreover, as appears from the statement above, after the estate was partitioned, the executors and trustees brought suit in the district court for a construction of the will in regard to the disposition that should be made of the income arising from the half of the property set aside to them as representatives of the J. B. Wilson estate. The five daughters of testator and their husbands, appellants, and the grandchildren of testator, appellees, were parties to the suit. After a hearing, the district court decreed that the trustees and their successors should execute the will as though the widow of testator were dead, and should dispose of the income from half the estate to the daughters as the will directed should be done after the death of the widow.

This was a construction and an adjudication to the effect that the rejection of the will by Mrs. Wilson, with the changes and readjustments resulting therefrom, did not defeat the testamentary scheme; that the will remained valid, its provisions workable; and that the same should be enforced as to the remaining half of the estate. As we view the matter, this construction and adjudication is binding on this court, as a part of the law of the case. We therefore overrule the contention that the testamentary scheme was destroyed.

[14] 4. The trial court construed the words "issue" and "surviving issue," as used in the will, to mean the children of testator's daughters. In this we believe the court was in error. These words, when used in a will, are prima facie to be interpreted in their ordinary sense as embracing descendants. There is nothing on the face of the will to show that these words were used in a narrower sense. 28 R. C. L. p. 257, § 230. We therefore hold that the words "issue" and "surviving issue" were employed in the sense of descendants.

The construction given the will by the trial court is, in our opinion, correct, except in the particular just mentioned, and to that

extent it will be modified, so as to conform to the view here expressed.

The judgment rendered below is correct and is affirmed.

Affirmed.