## McDOW et al. v. LUND et al.
### No. 15331.

Court of Civil Appeals of Texas. Fort Worth.

May 30, 1952.

Rehearing Denied June 27, 1952.

Fulbright, Crooker, Freeman & Bates, and Newton Gresham, all of Houston, for appellants.

Bleecker L. Morse, of Galveston, James F. Bobbitt, and M. C. Chiles, both of Houston, for appellees.

Wigley, McLeod, Mills & Shirley, of Galveston, for appellee Mason O'Keiff.

Vinson, Elkins & Weems and Tarlton Morrow, all of Houston, for appellee Cecil R. Haden.

RENFRO, Justice.

This suit was brought by the executors of the will of W. D. Haden, deceased, to determine whether or not a trust exists under the will, in view of the widow's refusal to accept under the will, and to determine the liability on the widow's half of the community estate for a portion of the Federal Estate and State Inheritance taxes.

Trial was had to the court without a jury and the court found it was the intention of the testator and the meaning of the will that the trust set up in the will should not be defeated by the widow's election to take her half of the community property. The trial court further held the widow's half of the community property liable for a portion of the Estate and Inheritance taxes. There is no appeal from the judgment in so far as it concerns inheritance taxes and the widow is not a party to this appeal.

The appellants are: (a) Lucydeen Haden McDow, daughter of W. D. Haden and wife, Lucy Haden; (b) Edna Moody Myrick, William Moody IV, and Virginia Moody Prunella Beardsley, children of Edna Haden Moody, deceased, and grandchildren of W. D. and Lucy Haden.

The appellees are: (a) W. B. Hamblen, R. T. McDow, and Edwin E. Lund, joint independent executors and trustees under the will of W. D. Haden; (b) Cecil R. Haden and Lila Haden Hamlin, son and daughter of W. D. and Lucy Haden; Mason O'Keiff, son of Violet Haden O'Keiff and grandson of W. D. and Lucy Haden.

Paragraph II of the will of W. D. Haden appoints the above-named executors, to-

gether with Cecil R. Haden, as "Joint Independent Executors and Trustees of my Estate." Cecil R. Haden resigned and is an appellee herein in his individual capacity.

The first seven points of error complain of the trial court's construction of the will as creating a trust in spite of the widow's renunciation of the will. Appellants have summarized their argument under the points of error as follows:

"The intention of the testator, as disclosed by the will and by the evidence admitted at the trial, was that a trust should be created only in the event Mrs. Lucy Haden accepted under the will. Mrs. Haden having renounced the will, no trust exists. This is true because:

"A. This intention of the testator is disclosed by the actual words used in the will.

"B. This intention of the testator is also shown by the spirit and scheme of the will, when the will is considered as a whole in the light of the admitted evidence as to circumstances surrounding the testator when the will was made and when he died.

"C. The rule of interpretation known as acceleration applies here. If there is any doubt as to the interpretation of the will on the point in question, then such rule should be used. Its application results in a defeat of the trust."

The testator's intent must be ascertained from the meaning of the words in the instrument. Hunt v. White, 24 Tex. 643. In construing a will, all of its provisions must be looked to for the purpose of ascertaining the real intention of the testator and if this can be ascertained from the language of the instrument, then any particular paragraph, which if considered alone might indicate a contrary intent, must yield to the intention manifested by the whole instrument. Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412.

Paragraph III of the will sets out what the surviving wife is to receive if she elects to take under the will.

Paragaph V sets up the trust in question; section (c) of said paragraph reads in part as follows:

"* * * After the death of my said wife, my Trustees shall proceed to liquidate my Estate and all of the various parts and portions thereof, but within a reasonable time and as best that they can do with the least possible loss, and all of the said net residue of my Estate shall be by them divided between and paid over, in equal moieties and portions to each of the following of my children and/or to the child or children of the body of any dead child of mine, all equally per stirpes; the names of my said children to whom my said property is herein bequeathed are: Edna Moody, wife of W. L. Moody III, now deceased, leaving three children, they, or the survivors of them, at my death to take the full share that would have been coming to their mother, Edna Moody, if alive; Cecil R. Haden, Lila Haden Hamlin, Violet Haden Kahn and Lucydeen Haden McDow, each and all of my said children above named, or the child or children of the body of each or any of them that may be dead before me shall share in equal moieties and portions in the residue of my Estate, but should any one of my said children above named predecease me, or, not having predeceased me, die before this Estate has been partitioned, after the death of my said wife, then his or her share shall go to his or her children equally per stirpes, * * *."

Appellants construe the opening and closing statements in Paragraph III of the will as evidencing intention of Haden that a trust was not intended in the event his wife declined to accept under the will, the beginning of said paragraph being, "If she accepts under this Will * * *," and ending "Should my wife not accept under and agree to this Will, then she will take her one-half (½) of our Community

Estate, but nothing under this will, and all of the various Haden corporations will have to be liquidated, to the great loss of her Estate and mine," arguing that if Haden thought the trust would be effective even if Mrs. Haden renounced the will, then he would not have included the statement that if she did not take under the will the Haden corporations would have to be liquidated. The words, "should my wife not accept under and agree to this Will, then she will take her one-half (½) of our Community Estate, * * * and all of the various Haden corporations will have to be liquidated, to the great loss of her Estate and mine," must be construed in connection with the other provisions of the will. A reference to Paragraph V, section (c), shows that the testator clothed his executors and trustees with very broad power to liquidate and dispose of any particular corporation and gave them affirmative authority to create new organizations in the way of corporations or conduct other businesses in the name of "my estate" along similar or other lines. He contemplated that his wife might not take under the will and that difficulty might arise in continuing the businesses known as the Haden corporations, but that if such did occur, the trustees could carry on any other businesses on behalf of the trust. Viewed in that light, the language is an argument to the wife to accept under the will. Furthermore, the will deals with a vast fortune, much of which is outside the Haden corporations.

Appellants also point out that in section (a) of Paragraph V, wherein the executors and trustees are directed to pay over certain revenues from stocks and bonds to his wife, he closed the said section with the words, "all of this, of course, is dependent upon my wife's acceptance under this will." We think this sentence means only one thing and that is that certain payments set up in the same section of the paragraph in behalf of the wife are dependent upon the wife's acceptance and does not refer to the trust set out in succeeding sections of the paragraph.

In the beginning of Paragraph V, the testator begins, "All of the rest and residue of my Estate, * * * I give, devise and bequeath unto my said Executors and Trustees * * * to have and to hold and to stand possessed thereof, and to manage, dispose of, renew and handle as they may see fit, for the accomplishment of the purposes of this Will and Trust, * * *." There can be no doubt that he intended to create a trust. Did he intend for the trust to continue during the lifetime of his wife, even if she did not take under the will? In Paragraph V, section (c), he used the term, "After the death of my said wife, my Trustees shall proceed to liquidate my Estate * * *." Further down in the same paragraph he said, "but should any one of my said children above named predecease me, or, not having predeceased me, die before this Estate has been partitioned, after the death of my said wife, then his or her share shall go to his or her children equally per stirpes * * *," and in Paragraph VIII he used the expression again, "When, after the death of my wife, the time comes for my Trustees to partition and divide the residue of my Estate * * *." We believe the language employed shows the intention of the testator that his estate be not partitioned until after the death of his wife.

The only reference in the will to a partition of his estate and distribution among the beneficiaries thereunder comes in each instance after the words, "after the death of my wife." Nowhere in the will is partition and distribution conditioned upon his wife's acceptance under the will, but in each instance where mentioned, partition of the corpus of the estate is conditioned upon the death of his wife. Except for monthly payments to the three named daughters, no one is to get anything until after the death of the wife.

In no instance does he set forth an alternative plan of distribution in the event his wife does not take under the will.

In Paragraph V, section (b), he gives his executors and trustees full power and authority to handle each and every part of "my Estate and of said Community Estate, if my wife accepts under and agrees to this Will, * * *." We think he was taking into consideration the fact that his wife might not accept under the will

and was authorizing the trustees to handle his estate in case his wife did not agree to the will and to handle the community estate if the wife did accept under the will.

Paragraph V, section (c), authorizes the trustees to pay to his three daughters as much as $400 a month and provides that said sums shall not be charged against them as advances from his estate. The testator used the words "My estate" at least twenty times in his will. He also made repeated use of the words "after the death of my wife." There is no provision for payment of anything to his grandchildren and to his son until after the death of his wife. As already stated, he was aware, as shown by his will, that his wife owned a community interest in all except some separate property which is small in comparison with the community estate. We have come to the conclusion, after reading the will from its four corners and construing each and every provision, the testator intended to create a trust on his separate property and his one-half of the community property regardless of any action his wife might take, and the trust was to continue until after the death of his wife.

The use of the words "my estate" and "my property" does not indicate a purpose to dispose of the wife's interest in the community estate. Ford v. Bachman, Tex. Civ.App., 203 S.W.2d 630, writ ref., n.r.e.; Moss v. Helsley, 60 Tex. 426. As we construe the will, no provision is conditioned upon Mrs. Haden's accepting under the will except those pertaining to Mrs. Haden personally.

He also expressed the desire that his executors and trustees keep in employment certain old and trusted employees. Such request would be meaningless if no trust was to be created and continued. In the provision authorizing new businesses and corporations, he omitted the word "executors" and used the word "trustees."

In our opinion the provisions of the will show an intent to create a trust and for said trust to continue until the death of his wife, and it is our duty, if such was his intention, to give them that interpretation, as the law upholds rather than destroys such trusts. Munger v. Munger, Tex.Civ.App., 298 S.W. 470, writ ref.; Neely v. Brogdon, Tex.Com.App., 239 S.W. 192. The cardinal rule of construction of wills always is that the intent of the testator will control and the courts should never adopt any rule of construction which has the effect of destroying the manifest intention of the testator. Lockett v. Wood, Tex.Civ.App., 84 S.W.2d 798.

The appellants argue that the sole reason for the trust was for the protection of the wife. Under the will she would have received considerably less than one-half of the community estate. In addition, the will stated that his wife was beneficiary in an insurance policy that would pay her $750 per month. Her future was secure from a financial standpoint whether she took under the will or not.

We think it a reasonable conclusion that if the testator had desired that the will and trust should be inoperative if she declined to take under the will, he would have so stated.

Appellants also argue that section (d) of Paragraph V, giving his wife authority to join with the executors and trustees in filling any vacancy which might occur, is evidence of an intent that the trust is not to be operative unless she takes under the will. We do not agree. He apparently had great confidence in his wife and it was natural that he would want her to have some degree of supervision over his one-half of the estate which he had left in trust to his children and grandchildren.

Throughout the instrument he had in mind the possibility that his wife might not accept under the will, yet he proceeded to set up the trust and continuously used the words, "my estate." We hold that a careful study of the will shows that it was his intention that the trust become effective and continue in spite of his wife's election not to take under the will.

If we be mistaken in our view that the words alone used in the will show a clear intent that the trust become effective regardless of the election of his wife to take

her community one-half interest, then we hold that extrinsic evidence offered by appellees was proper for the purpose of aiding in determining the testator's intent.

It is competent to admit extrinsic evidence to explain the intent of the testator by showing his situation in his relation to persons and things around him or by proof of the surrounding circumstances in order that the will may be read in the light of the circumstances in which he was placed at the time of making it. Hunt v. White, supra; Darragh v. Barmore, supra; Houston Bank & Trust Co. v. Lansdowne, Tex.Civ.App., 201 S.W.2d 834, writ ref., n.r.e.

Much testimony was introduced concerning the testator's family and his relationship thereto and concerning his various business enterprises and business associates. For the sake of brevity, we mention but briefly such evidence.

The will was executed on August 4, 1943, at which time he was seventy-eight years of age. His wife, at the time of the making of the will, was seventy-two years of age. His living daughters were thirty-five, thirty-seven and forty-one years, respectively. As already stated, the executors and trustees were given almost unlimited powers to liquidate, expand and create new businesses, etc. In the will he specifically requested that the heads of his various businesses be kept in their positions and that other employees be promoted and advanced. The evidence shows that a number of such officers and employees had been with him almost since the beginning of his business enterprises. The great authority given his executors and trustees in establishing new businesses and the request that his old and faithful employees be continued in their positions can only be explained by his intent that his separate property and his one-half of the community property should continue under the management and direction of the executors and trustees regardless of his wife's taking under the will.

All three daughters living at the time the will was executed had been married and divorced one or more times and none were self-supporting or had any business experience or training. For years the testator had paid their bills and given them money. He bought homes for all three of them but retained title in his own name, paying taxes and insurance and upkeep. The testator had in mind, when he wrote Paragraph VI of the will, which is commonly known as the spendthrift trust, his experience with his daughters and his knowledge of their lack of business experience and the probability of their disposing of their estate. Under his will only the daughters were to receive the payments up to $400 a month, and such amounts were not to be charged against their share of the estate. He made no such provision for his son and his grandchildren, the Moody children. The evidence shows that they were not at the time of the making of the will or prior thereto in need of any assistance.

The extrinsic evidence offered, if needed to determine the intent of the testator as reflected by the words used, was sufficient to uphold the trial court's judgment. The trust, with adequate provision against mortgaging or selling any interest therein by the beneficiaries, would insure that the daughters would have an adequate income during the balance of their mother's life and that his wife, in her old age, would not have the worry and care of taking care of her daughters, as might be the case if the property were partitioned to them immediately and through mismanagement or misfortune they lost their share or allowed it to be dissipated.

We believe that by the words of the will alone, and certainly by the words of the will considered in the light of the circumstances surrounding the testator at the time of the making of the same, it is shown that the dominant purpose of the testator in creating the trust was to keep his separate property and his interest in the community property in trust and to keep the Haden fortune, to the greatest extent possible, intact until the death of his widow and for a reasonable time thereafter.

To hold the trust inoperative would be to defeat the purpose of testator.

Having reached the conclusion that the trust is valid and operative, the rule of acceleration does not apply.

The appellants' first seven points of error are overruled.

In view of our construction of the will, the remaining point raised by appellants becomes immaterial and we therefore forego discussion of same.

The judgment of the trial court is hereby affirmed.