The ALAMO NATIONAL BANK OF SAN ANTONIO, Trustee, et al., Appellants,

v.

Bobbie Jean DAUBERT, Trustee, Appellee.

No. 7245.

Court of Civil Appeals of Texas, Beaumont.

April 29, 1971.

Rehearings Denied May 30, 1971.

———◆———

Morrison, Dittmar, Dohlgren & Kaine, Houston & Thompson, John E. Banks, San Antonio, for appellants.

Groce, Hebdon, Fahey & Smith, San Antonio, for appellee.

KEITH, Justice.

The appeal is from a judgment entered in a suit brought seeking a declaration and instruction as to the date of termination of the Bobbie Jean Daubert Trust (hereinafter "Daubert Trust"), created under the will of Robert C. Lipscomb, Deceased. The suit was brought under the provisions of the Texas Trust Act, Article 7425b–24, Vernon's Ann.Civ.St., and the Uniform Declaratory Judgments Act, Article 2524–1, V.A.C.S., by Bobbie Jean Daubert, co-trustee. The other co-trustee, Alamo National Bank (hereinafter "Bank"), was named original defendant; but, during the course of the trial, a guardian ad litem was appointed and appeared on behalf of the contingent beneficiaries, or heirs, and as representatives of the classes of persons capable of taking or that may take under the will of the decedent. Trial was to the court upon an agreed statement of facts and judgment was entered declaring that the trust had terminated and ordering the Bank to deliver the trust estate to Bobbie Jean Daubert, the beneficiary named therein, free of the trust, but less appropriate costs and expenses. The Bank and the guardian ad litem have appealed.

The last will and testament of Robert C. Lipscomb recited that all the property owned by the testator was held in community with his wife, Nicie W. Lipscomb. After making certain specific bequests to be paid out of his one-half of the community estate, the will created two trusts: the Nicie W. Lipscomb Trust and the Billie Jean Daubert Trust, with the named individuals as the primary beneficiaries of the respective trusts. The widow's one-half of the community estate was bequeathed to the trust bearing her name, and the residue of testator's one-half of the community estate was placed in the Daubert Trust.

The will designated the widow and the Bank as joint independent executors of the estate, and both qualified as such. However, the very day the will was admitted to probate and record, the widow elected against the provisions made for her in the will and took in lieu thereof her interest in the community property. Her renunciation was in broad language reading:

"That the undersigned Nicie W. Lipscomb, in the exercise of said election, does hereby renounce and quit all claims to any bequests or devises made to her by the said last will and testament of her said deceased husband, Robert C. Lipscomb, and does elect to take in lieu thereof her community interest in the estate belonging to her and her said deceased husband and any other rights and benefits to which she may be entitled at law or in equity."

The widow also qualified as co-trustee of the Daubert Trust, and served jointly with the Bank until November 28, 1968, when she resigned. She was succeeded by her daughter, Bobbie Jean Daubert, as co-trustee, in accordance with the provisions of the instrument.

Omitting the paragraph with reference to the termination of the Daubert Trust, the provisions thereof are set forth in the margin.[1] At the time of testator's death,

---

[1] "(1) The Trustees shall hold, manage, handle and control this trust estate, collect, receive and accumulate the income therefrom and, after deducting all necessary expenses incident to the administration of the trust, shall pay and distribute to my daughter, Bobbie Jean Daubert, in equal monthly or such other convenient installments, as may be determined by the Trustees, one/half

Mrs. Daubert was 23 years of age and the mother of one child. When she filed this suit in the court below, she was 35 years of age, and the mother of three additional children. The widow had remarried and was still living.

The Daubert Trust now under consideration provided for its termination in this manner:

"(5) This trust shall terminate when my daughter, Bobbie Jean Daubert, who was born on the 12th day of February, 1935, attains the age of thirty-five (35) years, if then surviving, but, if she be not surviving but be survived by issue, then when the youngest thereof who continues to survive attains the age of twenty-one (21) years or upon the death of the last survivor thereof, whichever first occurs, except it shall in any event terminate twenty-one (21) years after the death of my said daughter; *provided, however, it shall in no event terminate prior to the death of my wife.* In the event my said daughter be deceased before attaining the age aforesaid and not be survived by issue, or, if be survived by issue and if they all be deceased before taking such trust property, then the trust property shall terminate upon the death of the last survivor of

(½) of the net profits accruing to this trust estate during each fiscal year. In addition thereto, it is my desire that the Trustees from time to time pay to my daughter or use for the benefit of her immediate family (spouse or children) as much of the other one/half (½) of such net income as the Trustees in their discretion may deem necessary in order to maintain my daughter's family in the manner in which they are accustomed during my lifetime, (including the support, and maintenance of her children in completing their education) and to take care of the needs of my daughter and the members of her immediate family in the event of any illness, disability, or other emergency, or to financially assist my daughter and her family in any manner in which the trustees in their sole discretion may deem desirable or advisable.

"(2) If the income from this trust shall be insufficient to provide for the provisions of (1) above, or should the Trustees in their sole discretion deem it desirable or advisable to do so, they may use such portion of the principal of the trust from time to time and whenever necessary, taking into consideration any other income my daughter or the members of her immediate family may be receiving from sources other than this trust.

"(3) In the event my daughter be deceased before taking the trust property, if she be survived by issue, then the Trustees shall use such portion of this trust's income for their support and education, and care in the event of illness or disability, as they deem wise and best; and, in the event the income from the trust is insufficient to adequately support and educate them, or care for them in the event of illness or disability, then the Trustees shall use such portion of the principal of this trust from time to time and in such amount or amounts for such purposes, as they deem wise and best.

"(4) In the event my said daughter be deceased before taking the trust property and not be survived by issue, or, if survived by issue, they all also be deceased before taking the trust property, and my wife be surviving, then all of the net income of the trust shall be paid to my wife.

\* \* \* \* \*

"(6) Upon the termination of this trust, the trust property shall be delivered over to my said daughter or, if she be not then surviving, then to her then surviving children or the then surviving children of any child of hers, per stirpes, but, if there be none, then the same shall go to my brother, Thomas Clough Lipscomb, my nephew, Robert Norris Lipscomb, and my niece, Carol Ann Freeman, to share and share alike. In the event of the death of my brother, then his share shall be divided equally between my nephew, Robert Norris Lipscomb, and my niece, Carol Ann Freeman. If either Robert Norris Lipscomb or Carol Ann Freeman be then deceased with children surviving, such children shall take the share their parent would take if then surviving, per stirpes, but, if there be none of them, then all of such property shall go to the survivor."

such issue or upon the death of my wife, whichever last occurs." (Emphasis supplied.)

The italicized words form the basis of the controversy which we review.

Mrs. Daubert sought a declaration that the trust had terminated and that she was entitled to receive the corpus of the trust estate, the allegations being set forth in the margin.[2]

The separate briefs filed by the Bank and the guardian ad litem present three common points: (1) the plain and unambiguous language of the trust showed clearly that testator intended that the trust should not terminate until the death of his wife; (2) the primary purposes of the trust had not been accomplished; and (3) the doctrine of acceleration is not applicable to the facts of the case. The guardian ad litem has a fourth point asserting that the widow's renunciation did not affect or destroy her contingent interest in the Daubert Trust.

In our review of the case, we bear in mind the rules set out in several recent opinions of the Supreme Court of Texas, namely:

(a) In *Guilliams v. Koonsman,* 154 Tex. 401, 279 S.W.2d 579, 581 (1955), the court said:

"The cardinal rule to be followed in construing a will is to seek and enforce the intention of the testator; and if the intention of the testator be not clearly expressed by the particular language used it may be found by looking to the provisions of the will as a whole and to the circumstances surrounding its execution. *Darragh v. Barmore,* Tex.Com.App., 242 S.W. 714."

(b) In *Republic National Bank of Dallas v. Fredericks,* 155 Tex. 79, 283 S.W.2d 39, 42–43 (1955), we are told that "the meaning of the will must be determined by the language used 'within the four corners of the instrument'" and that "a will should be so construed as to give effect to every part of it, if the language is reasonably susceptible of that construction."

(c) And, in *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960), Justice Greenhill, quoting from 4 Page on Wills (Lifetime Ed.), § 1617, p. 627, adopted this language:

"'Assuming that there is a valid will to be construed, it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions.'"

We first dispose of the point involving acceleration and are in agreement with appellants that the doctrine is not applicable. This doctrine, new to the law of Texas, is reviewed in scholarly detail by Justice Williams in Aberg v. First National Bank in Dallas, 450 S.W.2d 403 (Tex.Civ.App.—Dallas, 1970, error ref. n. r. e.). The interest of the widow was, at best, very remote and contingent since it could not possibly become effective until after the death of Mrs. Daubert and *all* of her children. The doctrine of acceleration is applicable only when a *preceding* estate has been surrendered or renounced. *Aberg,* supra (450

2. "(1) The primary purpose for which the Testator created the Bobbie Jean Daubert Trust was accomplished when Bobbie Jean Daubert attained the age of thirty-five (35) years. Also, any incidental purpose of the Trust has become impossible and failed for future accomplishment by Nicie W. Lipscomb's election against the Testator's Will and her resignation as Co-Trustee of the Trust.

"(2) Nicie W. Lipscomb by her election against the Testator's Will rejected all bequests made to her and rendered such bequests inoperative, as well as such other provisions necessarily related to any such bequests, thereby accelerating the termination of the Trust; which contentions of Bobbie Jean Daubert have not been agreed to by her Co-Trustee."

S.W.2d at p. 408). The interest, if any was possessed by the widow after her renouncement, was not such an estate as authorized the invocation of the doctrine.

■ Mrs. Daubert's pleadings in the court below did not tender directly the issue of ambiguity in the will under consideration, and the Bank and the guardian ad litem both assert that there is no ambiguity. The case was tried upon an agreed statement of facts and we are familiar with the rule governing review of such cases. Neither the trial court nor this court has authority to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily compelled by the evidentiary facts agreed upon; nor, are there any presumed findings in favor of the judgment. Brown v. International Service Insurance Company, 449 S.W.2d 491, 492 (Tex.Civ.App.—Beaumont, 1969, error ref. n. r. e.).

However, we do no violence to the rule so recognized when we analyze the evidentiary facts properly before us and attempt to determine the intent of the testator; indeed, that is the only purpose of the litigation. Applying the rules distilled from the trilogy of Supreme Court cases noted above *(Guilliams, Fredericks,* and *Huffman,* supra), we consider the record as presented in the agreed statement of facts in determining the intent of the testator.

"The main scheme or plan of the testator is always regarded as a safe criterion in arriving at his purpose." Johnson v. Goldstein, 215 S.W. 840, 841 (Tex.Comm.App., 1919). It is clear from a reading of the elaborate will involved here that the main scheme or plan of the testator was to keep his separate estate *and* the entire community estate intact and cause both estates to be administered as a unit. He undertook to do this in a number of ways, but all with a common purpose evident from the face of instrument. First, in Article I, he said:

"* * * it is my purpose, desire and intention to dispose of and there is disposed of in this Will, if my wife both survives and elects to take hereunder, the whole of the community estate of my wife and self and any separate property I may own at the time of my death, * * *"

He placed all of the property (except the specific bequests and debts, etc.) into two trusts, one for the benefit of his wife and the other for the benefit of his daughter. He provided for a common and joint corporate trustee in each of the trusts and conferred the broadest of powers upon his trustees. He expressly provided that it would not be necessary to partition his estate to create the trusts, these being his words:

"It shall not be necessary to make partition of my estate on account of the creation of said trusts, but the same may hold undivided interests in the property devised to them; and, further, at the termination of the trusts, the trustees shall not be required to sell any portion of the trust property in order to make partition but may make such partition in kind and in undivided interests."

Further provisions were made permitting individual beneficiaries of the trusts to own "property and other interests jointly and in common with the trust estates," etc., and the individual trustees were authorized to deal and trade with themselves in their personal capacities concerning the properties and assets of the trust estates.

Had his widow elected to take under the will, she would have had the income from Nicie W. Lipscomb Trust for use during her lifetime with complete power of disposition in her will, and testator's daughter would have received nothing from this trust. In addition, he provided that his widow might, under a remote and unlikely

contingency, receive the income from the Daubert Trust during her lifetime.

Testator had foreseen the possibility that his widow might not elect to take under his will, and inserted in Article I a provision to be operative in such contingency.[3] He had drawn his will carefully so that in such contingency only his share of the community estate and his separate property would go into the Daubert Trust, and none of his property would pass to the Nicie W. Lipscomb Trust. He clearly evidenced his intent that the Daubert Trust was for the benefit of his daughter, not his widow for whom other provision had been made. He designated the daughter as the primary beneficiary and named the trust after her. The primary purpose of this trust was to provide for his daughter and her family until she reached the age of 35 years, when the trust was to terminate.

He demonstrated his confidence in his daughter's ability to handle her business affairs by naming her successor executor and trustee to her mother rather than designating the Bank as the sole successor trustee. His confidence was further shown when he made the Daubert Trust terminable upon her 35th birthday—and not upon her death as he had done in the mother's trust. And, the testator's confidence led him to omit a spendthrift clause in the Daubert Trust. Cf. *Aberg Case*, supra (450 S.W.2d at p. 411).

Testator's main scheme and plan was frustrated, however, when Mrs. Lipscomb renounced her rights under the will and elected to take her share of the community estate free from the restraints which he had attempted to place thereon. Testator's plan of a unitary management of all of the properties of his community estate had envisioned a situation in which his daughter might be dead and not be survived by any

child, and the income from the Daubert Trust might then be needed for the support and maintenance of his wife. With single management of all of the estate, i. e., with his widow and the Bank controlling all of the properties, his widow could continue to be supported. None of this came to pass; the widow took her half of the property without any control from the grave; she renounced all of her rights under the will, including her remote contingency under the Daubert Trust; and, finally, the widow resigned as co-trustee of the daughter's trust.

The guardian ad litem argues against our conclusion that the wife's election not to take under the will amounted to and was a renunciation of her contingent right to receive income from the Daubert Trust under the circumstances noted above. He cites in support of his position two cases: McDow v. Lund, 250 S.W.2d 247 (Tex.Civ. App.—Fort Worth, 1952, error ref.), and Munger v. Munger, 298 S.W. 470 (Tex.Civ. App., Dallas, 1927, error ref.). Neither of the cases is dispositive of the contention so advanced and each is easily distinguishable upon the facts. For instance, in *Munger*, the court noted that testator, notwithstanding his knowledge that his wife had a right to renounce the provisions in the will disposing of her one-half of the community estate, "made no alternative provision in case his wife refused to take the bequest in lieu of her legal rights." (298 S.W. at p. 475). In *McDow*, the court noted that "the use of the words 'my estate' and 'my property' does not indicate a purpose to dispose of the wife's interest in the community estate." (250 S.W.2d at p. 251). In our case, the testator clearly put his wife to an election, saying that he intended to dispose of the entire community estate; and, he made provision for the contingency which would arise if she elected not to take under the will. The

3. " * * * but in the event my wife does not survive me or if surviving declines to accept under this Will, then it is my desire and intention to dispose of only my one/half (½) of the community estate existing between us and the property thereof and the whole of any separate property I may own at the time of my death."

fourth point of the guardian ad litem is overruled.

█ Considering the entire will, we are led ineluctably to the conclusion that testator did not intend that the Daubert Trust would continue in existence after his daughter reached the age of 35 years, *solely* because her mother, who could not possibly reap any financial benefit therefrom, was still alive. It is not reasonable to believe, under the circumstances shown clearly by the will itself, that testator intended that his daughter be deprived of her patrimony upon the sole contingency of her mother's continued life.

The guardian ad litem, contending that the proviso under consideration must be given effect, calls to our attention the fact that "provided, however" must be construed as a limitation or restraint upon the clause immediately preceding, citing Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W. 2d 564, 566 (1945), a case construing an oil and gas lease. He also mentions the holding in Old Lincoln County M. F. I. Co. v. Justice County M. I. Co., 237 S.W.2d 678, 679 (Tex.Civ.App.—Amarillo, 1951, no writ), involving a policy of insurance, that "in no event" means "that under no circumstances." Giving recognition to the full scope of the holding in each case, we are not convinced that testator intended to deprive Mrs. Daubert of the full right of enjoyment of her inheritance when she reached the age of 35 years simply because her mother was still living. Under our record, all that the Bank can do is to manage Mrs. Daubert's property, pay over to her a *part* of the income therefrom, and collect its fees and expenses. Mrs. Daubert is able, insofar as our record discloses, to manage her own property and to collect and spend *all* of the income therefrom without any of the expenses of an outside agency.

As we have noted, testator's primary purpose in the creation of the Daubert Trust has now been achieved; and, any incidental purpose which he may have had (relating to his wife) has now become impossible of performance. Under such circumstances, we invoke the rule set out in Bogert, Trusts and Trustees (2d Ed.), § 1002, p. 502:

"* * * the achievement of the objects of the settlor will lead the courts to hold that the trust has ended, since its continuance would be useless and might frustrate the intent of the trustor as to remainder interests. Here the attainment of the purposes of the settlor brings a natural and not a premature termination.

* * * * * *

"If the main object of the trust has been attained, the trust will not be continued in order to achieve an incidental or minor purpose." (Id. at p. 507)

The possibility that the trustee would be called upon to make payment to Mrs. Daubert's children was only "an incidental or minor purpose" of testator when he created the Daubert Trust.

The text-writer in 89 C.J.S. Trusts § 93, p. 928 (black face type), states the rule in this manner:

"Equity will decree the termination of a trust prior to expiration of its term when all the objects and purposes of the trust have been accomplished."

See also, 54 Am.Jur., Trusts, § 85, p. 83. Cf. Restatement of the Law of Trusts 2d, § 334, Comment b.

Indeed, the situation which we face is the converse of that faced by the court in Lanius v. Fletcher, 100 Tex. 550, 101 S.W. 1076, 1078 (1907), wherein the court, in speaking of a prior case, said:

"There was no unaccomplished object of the grantor to be defeated by such judg-

ment [of termination]. When a trustee has no duties to perform, the purposes of the trust having been accomplished, it becomes a simple, passive, or dry trust, as it is termed in law, and the cestui que trust is entitled to have the full legal title and control of the property, because no other person has an interest in the property."

■ The law favors a construction of a will that will permit the earliest possible vesting of a remainder. Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888, 891 (1948); Crowley v. Vaughan, 347 S.W.2d 12, 16 (Tex.Civ.App.—San Antonio, 1961, error ref.).

The guardian ad litem recognizes the rule so stated, but contends that "all of the purposes * * * have not been accomplished," pointing to the fact that the provision under consideration permits the trustees to expend funds therefrom for the use and benefit of Mrs. Daubert's children and the "members of her immediate family." However, it should be noted that such power is granted during the existence of the trust, as an incidental provision therein. The testator did not manifest any intention discernible from the entire instrument, to make his grandchildren primary beneficiaries of the trust. It seems obvious that his purpose was to grant discretion to the trustees to care for the children, while their mother was under the age of 35 years, in case of their need; and, upon her reaching age 35, to entrust the well-being of his grandchildren to their natural parents thereafter. The continued life of the widow was not, under such circumstances, a primary factor in the inclusion of the provision permitting payment of funds to the minors.

Having disposed of the points raised by the parties, and being of the opinion that the judgment entered in the trial court is in accordance with the law of this state, the judgment is in all things affirmed.