LYTER HUFFMAN ET AL V. PHIL C. HUFFMAN ET AL.

No. A-7648. Decided October 5, 1960.
Rehearing Overruled November 30, 1960.
(339 S.W. 2d Series 885)

*Stone, Agerton, Parker & Snakard, R. T. Thornton, Hyder & Honts* and *John B. Honts, Tilley, Hyder & Law* and *Elton M. Hyder, Jr.*, and *Thos. H. Law*, all of Fort Worth, for petitioners.

*Collins & Green, Cantey, Hanger, Johnson Scarborough & Gooch* and *Charles L. Stephens,* all of Fort Worth, for respondents.

Mr. Justice Greenhill delivered the opinion of the Court.

This is a suit for the construction of the holographic will of Gladys Huffman. The question is whether or not her stock in the Rotary Apartments in Fort Worth was bequeathed in the will. The trial court, sitting without a jury, held that the stock did pass under the will. The Court of Civil Appeals reversed and held that it did not. 329 S.W. 2d 139. We here affirm the judgment of the Court of Civil Appeals.

The will reads:

"To Whom it May Concern:

"To Myrtle, Lyter and Pat I leave the choice of my personal belongings (my ring is at Ft. Worth Nat'l Bank.) Then they can give some things to the others.

"The Rotary Apts., Inc. stock belonging to me has been handed to Myrtle and Lyter for what I lost them in the oil deal.

"305 Lamar Building and contents to be divided among all four—2 brothers and two sisters and a fifth share to Lizzie Bell's two children.

"Please give part of Rotary Apts. Income to Pat

"I love all of you.

     "[s] Gladys Huffman

Rochester, Minn.

Sept. 3, 1957"

Gladys Huffman wrote her will while in the Mayo Clinic where she was being treated for a malignant condition from which she died a few months later. She had been divorced and had no children. The parties to this suit stipulated that "Myrtle and Lyter," mentioned in the will, were her sister and brother; that "Pat" was Patricia Wright, niece of the testatrix; that "all four" were her four surviving brothers and sisters: Lyter, Phil, and Myrtle Huffman, and Mrs. Mary Lou Spireling; and that "Lizzie Belle's two children" were William and Tom Hull, Jr., sons of the deceased sister of the testatrix. The parties further stipulated the identity and location of the Rotary Apartments and "305 Lamar Building," both in Fort Worth. The controversy, and the only matter at issue, concerns the stock in the Rotary Apartments.

The Rotary Apartments, Inc. was a corporation which owned the Rotary Apartments. The stock was wholly owned by the testatrix, Gladys Huffman, except for qualifying shares. After she was aware of her serious illness, she physically handed the certificates of stock in the corporation to her sister, Myrtle. A disagreement exists as to the words used by Gladys in handing the stock to Myrtle, but they were in substance, "Take this and keep it," or "take this and be responsible for them;" or "take it and keep it, you all will be the ones that will be needing it now."[1]

On the witness stand, both Myrtle and Lyter testified that Gladys gave them the stock at that time. They also gave inconsistent testimony that they considered the apartments as belonging to Gladys "until the end;" i.e., until Gladys' death. There was evidence that Gladys, who was President of Rotary Apartments, Inc., listed the apartments for sale as "owner" after handing the stocks to Myrtle, and that Gladys continued to receive and spend the income from the apartments. There was a good deal of testimony that Myrtle, Lyter and Pat had been particularly kind to Gladys and had cared for her in her illness. On the other hand, by concluding the will with the words, "I love all of you," Gladys expressed a love for all of her brothers and sisters and the niece and nephews mentioned in the will. There was also evidence that Myrtle and Lyter had advanced considerable sums to Gladys on "oil deals" and for the care of the apartments, and that they had not been repaid. Pat, appar-

---

1.—Counsel for respondents, plaintiffs below, waived the Dead Man Statute, Article 3716, Vernon's Texas Civil Statutes Annotated.

ently in order to be able to testify under the Dead Man Statute, quit-claimed any interest in the Rotary Apartments for $250.[2]

This suit for construction of the will was brought by Phil Huffman, Mary Lou Huffman Spireling (brother and sister of the testatrix) and others. Myrtle, Lyter and Pat brought a cross action in which they contend that the will was unambiguous and that the Rotary Apartments stock passed under the will. In the alternative they pleaded that there had been a gift of the stock by Gladys to Myrtle and Lyter before Gladys' death.

The trial court, without a jury, found that there had been no gift of the stock from Gladys during her lifetime to Myrtle and Lyter. No appeal was taken from that holding and that question is not before us.

The particular portion of the will here involved reads:

"The Rotary Apts., Inc. stock belonging to me has been handed to Myrtle and Lyter for what I lost them in the oil deal * * *.

"Please give part of the Rotary Apts. Income to Pat."

We agree with the Court of Civil Appeals that there was not a bequest of the Rotary Apartment stock. There are no words of grant or devise; and, taken in context, there are no words from which a bequest can reasonably be inferred. The paragraph concerning the apartments above quoted is a statement that Gladys had handed the stock to Myrtle and Lyter for what she had lost them. She may have believed that she had previously given the stock to them. The trial court found that she had not, and the matter has become final. We may speculate that Gladys wanted Myrtle and Lyter to have the stock, and their position deserves a good deal of sympathy. But the duty of the Court is to construe the will from the words used therein. And the instrument simply does not bequeath the stock to Myrtle and Lyter. The intent must be drawn from the will, not the will from the intent.

---

2.—Mrs. Patricia Wright testified that before the trial she had been given $250 for her interest in the personal belongings of testatrix. Her counsel, in explaining and arguing her position, stated that "* * * she disclaimed any interest in the Rotary Apartments, which she did not have to start with anyway, and she knew that. * * *." This latter statement is inconsistent with petitioners' alternative position that the apartments passed to Myrtle, Lyter and Pat under the first paragraph of the will, discussed later.

The rule of law applicable here is expressed in Page on Wills:

"* * * In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express apart from the language used, but what the words he has used do express. Accordingly, when there is no dispute as to what words were written in the will, it is a fundamental principle that extrinsic evidence cannot be received to show that the testator intended something outside of, and independent of such written words, to add words to those in the will, to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances was not contemplated by him." 4 Page on Wills (Lifetime Ed.), 622 et seq., section 1617.

"The only purpose and justification of the admission of extrinsic evidence is to explain testator's meaning which is set forth in the words of the will. Assuming that there is a valid will to be construed, it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions." *Ibid.*, 627.

The words "Please give part of Rotary Apts. Income to Pat," are but precatory in the light of the entire will. *Byars v. Byars*, 143 Texas 10, 182 S.W. 2d 363 (1944). And, as noted, Pat disclaimed any interest in the apartments.

Myrtle and Lyter next contend that the Rotary Apartment stock passed under the first paragraph of the will which reads:

"To Myrtle, Lyter and Pat I leave the choice of my personal belongings (my ring is at Ft. Worth Nat'l Bank.) Then they can give some things to the others."

In support of the contention, they rely on *Gilkey v. Chambers*, 146 Texas 355, 207 S.W. 2d 70 (1948). The will there involved was drawn by an uneducated person, and it was held that real property passed under a grant of the testatrix's "*persnal*" property.

In his judgment, the trial court specifically found:

"B.     That the first paragraph of the will devises to Myrtle

Huffman, Lyter Huffman and Patricia Wright all of the personalty belonging to Gladys Huffman at the time of her death, except that which is otherwise disposed of by her will, which exceptions are the furnishings and contents in the Huffmans roming house located at 305 Lamar Street * * * and the Rotary Apartments, Inc., corporate stock hereinafter referred to in this judgment."[3]

We believe that the trial court was correct in such finding and holding. The paragraph refers to personal belongings such as the ring of the testatrix which was at the bank. She directs that Myrtle, Lyter and Pat can give some of her "things" (personal belongings) to "the others." She mentions separately the Rotary Apartment stock and "305 Lamar Building." Under this construction, Pat would get a one-third interest in the apartments; an dshe would be entitled to one-third of the income as a matter of right. This is inconsistent with the precatory words toward the end of the will, "Please give part of Rotary Apts. Income to Pat." *Gilkey v. Chambers* is not in point here.

■ The contention of petitioners that, in the alternative the apartments passed under the first paragraph of the will illustrates the danger of the court's attempting to rewrite a will. Under this construction, the apartments would go to three people: Myrtle, Lyter and Pat. Their other position is that the apartments passed under the second paragraph of the will: "the * * * stock belonging to me has been handed to Myrtle and Lyter * * * ." Under this construction, only two people would be the legatees, Myrtle and Lyter. To accomplish the latter result, the court would have to rewrite the will in one of several ways:

(1) Insert the words, "I leave" before "Rotary Apts. Inc. Stock" and insert the word "which" before the words has been handed to Myrtle and Lyter."

(2) Insert the numbers one and two before "personal belongings" and "Rotary Apts. Inc. stock" so that the word "leave" in the first paragraph would be used for both para-

---

3.—The judgment later decrees that paragraph one devised to Myrtle, Lyter and Pat "all personalty belonging to Gladys Huffman, at the time of her death, not otherwise disposed of in the will, and it is so adjudged." Findings of fact were requested. The court filed findings, the first of which adopted the findings theretofore made in its judgment, supra, and again found that the first paragraph bequeathed "all items of personal property owned by her at the time of her death except those items which she otherwise specifically disposed of in her will." We construe these latter general findings to be controlled by the specific findings in the judgment.

graphs: "I leave (1) my personal belongings and (2) the Rotary Apts. Inc. stock * * * ."

(3)   A third suggestion is that the period at the end of the first paragraph should be changed into a semicolon so that the word "leave" in the first paragraph would also control the second paragraph. While the Texas decisions are liberal in the construction of wills, and the courts of Texas go a long way in the relaxation of the rules of construction of wills to arrive at the manifest intention of the testator, especially when the will is written by a layman, courts are limited to the intent found within the will itself and may not redraft the will. *Hunt v. White*, 24 Texas 643; *Schelb v. Sparenberg*, 133 Texas 17, 124 S.W. 2d 322 (1939). The very purpose of requiring a will to be in writing is to enable the testator to place it beyond the power of others, after he is dead, to change or add to his will or to show that he intended something not set out in, or different from, that set out in his will.

Finally, Myrtle and Lyter contend that the will should be construed as passing the Rotary Apartment stock because of the presumption that the testatrix did not intend to die intestate as to that property. This presumption is but one of the factors to be considered in arriving at the intention of the testatrix as expressed in the will itself. It cannot be invoked to add or to change the express language of a will. *Kostroun v. Plsek*, (Com-App. 1929), 15 S.W. 2d 220.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered October 5, 1960.

Rehearing overruled November 30, 1960.