Janie PRICE et al., Appellants,

v.

The AUSTIN NATIONAL BANK, Independent Executor of the Estate of Lillian Price Swann, Deceased, Appellee.

No. 12195.

Court of Civil Appeals of Texas, Austin.

April 30, 1975.

Rehearing Denied May 21, 1975.

------

Fred B. Werkenthin and Lawrence S. Smith, Small, Craig & Werkenthin, John L. Hill, Atty. Gen., Richard E. Green, Asst. Atty. Gen., Austin, for appellants.

Peter M. Lowry, McGinnis, Lochridge & Kilgore, Austin, for appellee.

O'QUINN, Justice.

The Austin National Bank, in its capacity as independent executor of the estate of Lillian Price Swann, deceased, filed this suit in December of 1971 for declaratory judgment construing the will of decedent with respect to specified testamentary trusts and the Bank's powers and duties under the will in acting as executor. Seventeen persons named in the will, two banking institutions acting as trustees under the will, and the attorney general of Texas were named defendants, the attorney general being joined under authority of Article 4412a, Vernon's Ann.Tex.Civ. Sts., by reason of charitable trusts affected by the suit.

The parties ultimately joined issue on construction of paragraph VI.g. of the will and distribution to be made under subparagraphs (1) through (8) under that provision. The appellants, who are four individual beneficiaries of trusts under the will, the attorney general, and trustees of certain charitable trusts having remainder interests, contended in the trial court and contend on appeal that the correct amount to be distributed under paragraph VI.g. to the four testamentary trusts is $203,478.85. The appellees, who are residuary legatees under paragraph VI.g., contend that the amount to be distributed to the four testamentary trusts is $146,428.85, or $57,050.00 less than the figure appellants contend is correct.

The trial court's judgment, entered in April of 1974, held " . . . that the sum of $146,428.85 is the correct amount to be distributed by . . . [the executor] under the terms of Paragraph VIg of such Will to the four testamentary trusts created in Paragraph VIg(1.) through VIg(4.) thereof."

The individual appellants [1] and the trustees make their contentions on appeal under six points of error, and the attorney general brings six points of error. Appellees answer under two reply points. We will

1. Appellants are Janie Price, Johnny Price Murphy, Wayne Price Brock, Harriette Graham, beneficiaries of the Evans Swann Memorial Trust No. 2 (an *inter vivos* trust created by the testatrix), and are also beneficiaries under trust created under the will; The Austin National Bank of Austin, Trustee for John C. and Leona Numsen Price Scholarship Trust; the Citizens First National Bank of Tyler, Trustee for the Evans Swan Smith County Memorial Trust; The Austin National Bank of Austin, Trustees for the Evans Swan Memorial Trust; and The Austin National Bank of Austin, Trustee for each of the named individuals and trusts under terms of the will of Lillian Price Swann, deceased. Appellees are Libby Calvert Kennedy, G. Victor McNallie III, and Roger Wallace, who are residuary legatees under Par. VI.g. of the will of decedent.

overrule all points urged by appellants and will affirm the judgment of the trial court.

The will of Lillian Price Swann, dated June 11, 1969, which is the subject of this lawsuit, and a codicil dated June 30, 1969, were admitted to probate in Travis County early in December of 1969, following the death of testatrix in Austin on November 15, 1969. During her lifetime Mrs. Swann created two *inter vivos* trusts, the first instrument dated June 6, 1968, styled The Evans Swann Memorial Trust, referred to as Trust No. 1, and the second instrument dated January 3, 1969, styled The Evans Swann Memorial Trust No. 2, referred to as Trust No. 2.

In her will Mrs. Swann recognized that all her property was acquired during her marriage to Evans S. Swann who predeceased the testatrix. Apparently in part to aid her executor in meeting estate and inheritance tax requirements, Mrs. Swann directed the executor to divide her estate into two equal portions by value, and referred to the first part as her husband's portion and to the second part as her portion.

Paragraph VI of the will, under examination and construction in this appeal, provided in pertinent part the following:

## "VI

"My portion of the estate, computed as set forth above, shall be distributed as follows:

[Subparagraphs a. through f. make six cash bequests to named persons in sums ranging from $500 to $10,000, followed by subparagraph g. next set out]

"g. Such sum of money which, when added to the value as of the date of my death of the corpus of The Evans Swann Memorial Trust No. 2, created by instrument dated January 3, 1969 (less the payments totaling $25,000 provided for in paragraphs 3a and 3d), will equal $310,000.00, to The Austin National Bank, Trustee, to be held, administered and distributed as hereinafter set forth in this subparagraph g:

"(1) $75/310$ths, of such sum shall be set aside in a separate trust for the benefit of my sister, Janie Price, of Laredo, Texas, for the term of her natural life and the income only from such trust paid to her or for her benefit in convenient installments not less frequently than monthly.

"(2) $75/310$ths of such sum shall be set aside in a separate trust for the benefit of my sister, Johnnie Price (Mrs. Alfred) Murphy, of Laredo, Texas, for the term of her natural life and the income only from such trust paid to her or for her benefit in convenient installments not less frequently than monthly.

"(3) $100/310$ths of such sum shall be set aside in a separate trust for the benefit of my nephew, Wayne Price Brock, of Fort Worth, Texas, for the term of his natural life and the income only from such trust paid to him or for his benefit in convenient installments not less frequently than quarterly.

"(4) $60/310$ths of such sum shall be set aside in a separate trust for the benefit of Harriette Graham, daughter of Mr. and Mrs. W. Murray Graham, Austin, Texas, for the term of her natural life and the income only from such trust paid to her or for her benefit in convenient installments not less frequently than monthly.

"(5) Upon the death of the first to die of my sisters named in Subparagraphs (1) and (2) above, the trust previously held for the benefit of such deceased sister shall pass eighty percent (80%) to the John C. and Leona Numsen Price Scholarship Trust set forth in Subparagraph 3g(1) of the trust indenture with The Austin National Bank dated January 3, 1969, and twenty percent (20%) to the Evans Swann Memorial Trust created by instrument dated June 6, 1968, naming The Austin National Bank, Trustee, (seven-tenths ($7/10$ths) of such twenty percent to be used for med-

ical scholarships as set forth in Paragraph 6 of such trust instrument, and three-tenths (3/10ths) of such twenty percent to be used for scholarships administered by the Downtown Austin Rotary Club as set forth in Paragraph 5 of such trust).

"(6) Upon the death of the second to die of my sisters named in Subparagraphs (1) and (2) above, the trust previously held for the benefit of such second deceased sister shall pass to the Citizens First National Bank of Tyler, Texas, as trustee, to be used for the purposes of the Smith County medical scholarship trust set forth in Paragraph 3g(2) of the trust indenture with The Austin National Bank, Trustee, dated January 3, 1969.

"(7) Upon the death of my said nephew, the trust previously held for his benefit shall pass one-fourth (1/4th) to the Price Scholarship Trust set forth in Subparagraph 3g(1) of the trust indenture with The Austin National Bank dated January 3, 1969, fifty percent (50%) to The Evans Swann Memorial Trust created by instrument dated June 6, 1968 (one-half (1/2) of such fifty percent to be used as provided in Paragraph 5 of such trust instrument, and the other one-half (1/2) to be used as provided in Paragraph 6 of such trust instrument), and one-fourth (1/4th) to the Citizens First National Bank of Tyler, Texas, as trustee, to be used for the purposes of the Smith County medical scholarship trust set forth in Subparagraph 3g(2) of the trust indenture with The Austin National Bank, Trustee, dated January 3, 1969.

"(8) Upon the death of Harriette Graham, the trust previously held for her benefit shall pass one-third (1/3) to The Evans Swann Memorial Trust created by instrument dated June 6, 1968, to be used for medical scholarships as provided in Paragraph 6 of such trust instrument, one-third (1/3) to the Citizens First National Bank of Tyler, Texas, as trustee, to be used for the purposes of the Smith County medical scholarship trust set forth in Subparagraph

3g(2) of the trust indenture with The Austin National Bank, Trustee, dated January 3, 1969, and one-third (1/3) to the John C. and Leona Numsen Price Scholarship Trust set forth in Subparagraph 3g(1) of the trust indenture with The Austin National Bank, dated January 3, 1969."

The paragraphs in Trust No. 2 (3a and 3d) referred to in VI.g. of the will are included in the following pertinent excerpt from the trust instrument:

"3. Upon the death of the Grantor [Mrs. Swann] the trust principal shall be distributed as follows:

"a. $5,000.00 to the Episcopal Church of the Good Shepherd, Austin, Texas, preferably for the little chapel (none shall be used for the diocese).

"b. $5,000.00 to Episcopal Christ Church, Tyler, Texas (none shall be used for the diocese).

"c. $5,000.00 to the Friends of The Austin Public Library, Austin, Texas, in memory of Evans Swann.

"d. $10,000.00 to The Scientific, Education, and Research Foundation of Brackenridge Hospital, Austin, Texas, in memory of Evans Swann.

"e. $57,050.00 to the Trustee of the Thomas E. Swann Memorial Trust, Tyler, Texas, to be added to the corpus of the trust.

"f. The remainder of said trust principal shall be distributed to The Austin National Bank, a national banking association with offices in Austin, Travis County, Texas, as Trustee, to be held, administered, and distributed as follows:

"(1) 75/810ths of such sum shall be set aside in a separate trust for the benefit of the Grantor's sister, Janie Price, of Laredo, Texas, for the term of her natural life and the income only from such trust paid to her or for her benefit in convenient installments.

"(2) $^{75}\!\%_{310}$ths of such sum shall be set aside in a separate trust for the benefit of the Grantor's sister, Johnnie Price (Mrs. Alfred) Murphy, of Laredo, Texas, for the term of her natural life and the income only from such trust paid to her or for her benefit in convenient installments.

"(3) $^{100}\!\%_{310}$ths of such sum shall be set aside in a separate trust for the benefit of the Grantor's nephew, Wayne Price Brock, of Fort Worth, Texas, for the term of his natural life and the income only from such trust paid to him or for his benefit in convenient installments.

"(4) $^{60}\!\%_{310}$ths of such sum shall be set aside in a separate trust for the benefit of Harriette Graham, daughter of Mr. and Mrs. W. Murray Graham, Austin, Texas, for the term of her natural life and the income only from such trust paid to her or for her benefit in convenient installments.

"(5) Upon the death of the first to die of the Grantor's sisters named in Subparagraphs (1) and (2) above, the trust previously held for the benefit of such deceased sister shall pass two-thirds (⅔) to the John C. and Leona Numsen Price Scholarship Trust set forth in Subparagraph g(1) hereof, and one-third (⅓) to The Evans Swann Memorial Trust created by instrument dated June 6, 1968, between the Grantor and The Austin National Bank, Trustee, to be used for medical scholarships as set forth in Paragraph 6 of such trust instrument.

"(6) Upon the death of the second to die of the Grantor's sisters named in Subparagraphs (1) and (2) above, the trust previously held for the benefit of such second deceased sister shall pass to the Citizens First National Bank of Tyler, Texas, as trustee, to be used for the purposes of the Smith County medical scholarship trust set forth in Paragraph g(2) hereof.

"(7) Upon the death of the Grantor's nephew, the trust previously held for his benefit shall pass ten percent to the Price Scholarship Trust set forth in Subparagraph g(1), fifty percent to The Evans Swann Memorial Trust (one-half of such fifty percent to be used as provided in Paragraph 5 of such trust instrument, and the other one-half to be used as provided in Paragraph 6 of such trust instrument), and forty percent to the Citizens First National Bank of Tyler, Texas, as trustee, to be used for the purposes of the Smith County medical scholarship trust as set forth in Subparagraph g(2) hereof.

"(8) Upon the death of Harriette Graham, the trust previously held for her benefit shall pass one-sixth (⅙) to the Price Scholarship Trust set forth in Subparagraph g(1), one-third (⅓) to The Evans Swann Memorial Trust, to be used as provided in Paragraph 6 of such trust instrument, one-sixth (⅙) to The Evans Swann Memorial Trust, to be used as provided in Paragraph 5 of such trust instrument, and one-third (⅓) to the Citizens First National Bank of Tyler, Texas, as trustee, to be used for the purposes of the Smith County medical scholarship trust set forth in Subparagraph g(2) hereof."

It is clear from the opening portion of paragraph VI.g. of the will that the testatrix required the executor to ascertain the value of Trust No. 2 as of the day of her death and then compute from the formula provided the amount to be distributed, first to the four testamentary trusts of which the beneficiaries were appellants Janie Price, Johnnie Price Murphy, Wayne Price Brock, and Harriette Graham, and then to remainder interests bequeathed by numbered subparagraphs (5) through (8) under subparagraph g. In this portion the will, in paragraph VI.g., parallels the distribution found in paragraph 3 of Trust No. 2.

It is undisputed that as of the date of Mrs. Swann's death the value of Trust No. 2 was $188,571.15, and the trial court found that value. The trial court held ". . . that according to the plain and unambiguous terms of said Will, the

amount distributable under the terms of Paragraph VIg is determined by deducting the value at the date of Mrs. Swann's death of the corpus of the . . . Trust No. 2 less $25,000.00 from the sum of $310,000.00 . . . [and further found] that the sum of $146,428.85 is the correct amount to be distributed by Plaintiff [the executor] under the terms of Paragraph VIg . . . to the four testamentary trusts created in Paragraph VIg (1.) through VIg (4.) thereof."

By deducting $25,000.00 from the value of the trust ($188,571.15) a remainder of $163,571.15 was obtained, which when subtracted from $310,000.00 indicated the sum for distribution, or $146,428.85.

The trial court held " . . . That based upon the extrinsic evidence concerning the intent of the testatrix, the testatrix intended in the execution of her said Will to continue in effect *her plan to provide a total of $310,000.00 to be available for the purposes and beneficiaries* set forth in Paragraph VIg of her Will, said $310,000.00 to be provided by the value at her death of the *gift previously made for the same purposes and beneficiaries under the terms of Paragraph 3.f of . . . Trust No. 2* augmented by a sufficient payment from her estate so as to equal said $310,000.00." (Emphasis has been added)

The computation prescribed by Mrs. Swann in paragraph VI.g. of her will is based on the value of the corpus of Trust No. 2 on the day of her death, which was $188,571.15, "less the payments totalling $25,000 provided for in paragraphs 3 a *and* 3 d" of the trust instrument. (Emphasis added) Because the payments provided for in paragraphs 3 a *and* 3 d are "$5,000.00 to the Episcopal Church of the Good Shepherd . . ." and "$10,000.00 to The Scientific, Education, and Research Foundation of Brackenridge Hospital . . .," or a total of only $15,000, an inconsistency exists, unless the clause of the will indicating $25,000 in payments is read as payments "provided for in paragraphs 3 a

*through* 3 d" of the trust, since the payments provided for in these *four* paragraphs aggregate the sum of $25,000.

The trial court found "that the portion of Paragraph VIg, page 7 of the Will, which is in parentheses, should be read as follows: '(less the payments totalling $25,000 provided for in Paragraphs 3 a through 3 d)'" of Trust No. 2. The court held "that the recitation in Paragraph VIg of 'the payments totalling $25,000 provided for in Paragraphs 3 a and 3 d' is conclusive that $25,000 and only $25,000 be deducted from the value of the trust in determining the amount to pass under Paragraph VIg and, moreover, [sic] no parties to this suit have alleged that the $25,000 figure should be changed to $15,000, so the figure of $25,000 should be left unchanged."

The position of appellants is that the "will should be construed to require distribution of a total of $310,000 through the combination of Paragraph VI(g) of the will and the counterpart portion of . . . Paragraph 3 f" of Trust No. 2. "Appellants believe," it is argued, "such a result to be mandated by the otherwise inexplicable juxtaposition of the figure $310,000 with the distributions directed in fractions of 310, as well as by the evidence of the will itself, supported and corroborated by the extrinsic evidence of the testatrix' intent erroneously excluded by the trial court."

The trial court did exclude extrinsic evidence offered "to support and corroborate" the intent of the testatrix. The court held "that the Will on its face is clear and free from ambiguity, and that extrinsic evidence is not receivable so as to construe the same."

Appellants contend that Mrs. Swann had "her own individualized way of conceptualizing her estate" and argue that "Because the court's holding that the will is free from ambiguity and therefore extrinsic evidence is inadmissible to aid in its construction is so contrary to the facts and the established authorities, one suspects

that the court's judgment does not adequately verbalize the decisional process that obtained."

Appellants apparently urge that Mrs. Swann's mental processes should have been explained by extrinsic evidence so that the trial court would not have fallen into error in failing to subtract from the value of Trust No. 2, not only the $25,000 in payments stated in the will, but also $57,050 found in paragraph 3 e of the trust. If the court had proceeded in this manner, a total of $310,000 from both the will and the trust, instead of $252,950.00, would have been available for distribution to appellants.

To achieve this end, it would have been necessary for the trial court to ignore the plain words of paragraph VI.g. of the will and to hear extrinsic evidence, drawn from prior wills and from parol interpretations of Mrs. Swann's intentions, and then make computations which would have had as their purpose providing $310,000 for distribution from the trust and the will, regardless of the formula for computation provided in plain words by Mrs. Swann in her will.

By rewriting paragraph VI.g. of the will to require the executor, in computing the sum to be distributed, to subtract not only the payments totalling $25,000 in paragraphs 3 a through 3 d of the trust, but also the sum of $57,050 found in paragraph 3 e, the combined sum for distribution under the will and the trust would have been $310,000. Appellants insist this was Mrs. Swann's intent. If it was her intent, we do not find it expressed in the words she used in paragraph VI.g. of the will.

To paraphrase paragraph VI.g., the formula to be employed by the executor may be stated in these words: To find the sum of money to be distributed, subtract from the value of the trust, as that value is found on the day of decedent's death, the sum of $25,000, and then subtract that remainder from $310,000. Following these directions, the executor would subtract from $188,571.15 (trust corpus) the sum of $25,000, leaving a remainder of $163,571.15, and by subtracting that remainder from $310,000 the sum for distribution, as found by the trial court, would be $146,428.85. To employ any other computation requires going outside the terms of the will for a different formula.

■ The result flowing from the computation prescribed by the will, and followed by the trial court, is that appellants feel deprived of $57,050, the very sum appellees believe they are justly entitled to because the formula for calculating the amount for distribution leaves the residue richer by $57,050. When the words of the will are so plain as to be without doubt or ambiguity, the courts must adhere to the will and may not speculate that some other result may have been intended. "The intent must be drawn from the will, not the will from the intent." Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885, 888 (1960).

There the Supreme Court held that in arriving at the intention of the testatrix the true purpose of the inquiry is to ascertain what the words used express and not to discover what she meant to express apart from the language used in the will. The Court adopted this language: "Accordingly, when there is no dispute as to what words were written in the will, it is a fundamental principle that extrinsic evidence cannot be received to show that the testator intended something outside of, and independent of such written words, to add words to those in the will, to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances was not contemplated by him." (4 Page on Wills, (Lifetime Ed.), sec. 1617, p. 622)

In *Huffman* the Supreme Court pointed out a number of changes in the will that would have been necessary to accomplish results contesting parties insisted should

flow from the will. The Court declined to rewrite the will by inserting words and numbers and substituting a semicolon for a period, and observed that although Texas courts have been liberal in construction of wills and "go a long way in the relaxation of the rules of construction of wills to arrive at the manifest intention of the testator, . . . courts are limited to the intent found within the will itself and may not redraft the will. Hunt v. White, 24 Tex. 643; Schelb v. Sparenberg, 1939, 133 Tex. 17, 124 S.W.2d 322."

"The very purpose of requiring a will to be in writing," the Supreme Court continued in *Huffman*, "is to enable the testator to place it beyond the power of others, after he is dead, to change or add to his will or to show that he intended something not set out in, or different from, that set out in his will." (339 S.W.2d 889, col. 2)

Recent cases which follow Huffman v. Huffman include Alamo National Bank of San Antonio v. Daubert, 467 S.W.2d 555 (Tex.Civ.App. Beaumont 1971, writ ref. n. r. e.), in which the court of civil appeals quoted language adopted in *Huffman* from Page on Wills:

" 'Assuming that there is a valid will to be construed, it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions.' " 4 Page on Wills (Lifetime Ed.), sec. 1617, p. 627.

The principle of *Huffman* controlled these recent decisions: Muse v. Estate of Ether Muse, 486 S.W.2d 602 (Tex.Civ.App. Beaumont 1972, writ ref. n. r. e.) ; Bryan v. Melvin, 499 S.W.2d 17 (Tex.Civ.App. Waco 1973, no writ) ; In re Estate of Kirby, 516 S.W.2d 284 (Tex.Civ.App. Waco 1974, writ ref. n. r. e.).

An ambiguity arises only when the meaning arising from language used admits of more than one interpretation. We find no ambiguity in the language of Mrs. Swann's will, either patent or latent. The terms of paragraph VI.g., prescribing the manner of computing the amount of money to be distributed under that paragraph, are clear, exact, and specific, and we find no room for doubt as to the intention of the testatrix. "Where the language of the will is plain and unambiguous, the court cannot give it a meaning different from that warranted by its words merely for the purpose of carrying into effect a conjecture or hypothesis as to the testator's intention by changing such language." McMullen v. Sims, 37 S.W.2d 141, 143 (Tex.Comm'n App.1931, holding approved).

The words of Mrs. Swann's will are not subject to interpretation, and the trial court properly refused to receive and consider evidence concerning the situation of testatrix, or other extrinsic evidence, and based on the evidence give decedent's words a meaning different from the words of the will.

Finding no error in the judgment of the trial court, the judgment is in all things affirmed.

Affirmed.

SHANNON, J., not participating.