**R. Wright WATKINS, Sr. et al., Appellants,**

**v.**

**W. Ben BOYKIN and C. O. Niblack, Administrators of the Estate of Benjamin Edmund Watkins, Deceased, Appellees.**

**No. 6472.**

Court of Civil Appeals of Texas, El Paso.

April 7, 1976.

Rehearing Denied May 5, 1976.

Collins, Langford & Pine, John A. Langford, Charles E. Vinson, El Paso, for appellants.

Scott, Hulse, Marshall & Feuille, J. F. Hulse, Charles R. Jones, Schuyler B. Marshall, El Paso, for appellees.

## OPINION

PRESLAR, Chief Justice.

In this will contest, the trial Court admitted to probate a handwritten instrument as the last will of Benjamin Edmund Watkins. Admission to probate was opposed on the grounds that the instrument was not a will. Questions presented on appeal are whether or not the instrument evidenced testamentary intent and whether a portion of the instrument could be admitted as a will when the entire instrument was not wholly in the handwriting of the maker.

R. Wright Watkins, Sr., Mertis Delia Watkins and Georgia Watkins, heirs of Benjamin Edmund Watkins, are contestants, and Appellees, W. Ben Boykin and C. O. Niblack, are proponents of the will. We affirm the judgment of the trial Court admitting the instrument to probate.

On June 21, 1975, Benjamin Edmund Watkins, hereinafter referred to as the deceased, or author, prepared an instrument which was, with the exception of one paragraph, in his own handwriting. Relevant portions of this instrument are as follows:

" 'Giving thanks to God for my Christian School Teacher Parents George Isham Watkins and Delia Wright Watkins, who bore 9 children, me Ben Edmund, the youngest.

On this June 21, 1974, A.D. three people, namely W. Ben Boykin, 407 Baltimore Ave., El Paso, Texas 79902; Lt. Colonel (Ret.) C. O. Niblack, 8300 Saturn Place, El Paso, Texas 79904 and Ben E. Watkins owner and deponee of property set forth in this Will, hereby set up a deed of trust in continuation of management of my properties in the event of my demise or incapacity. The purpose being to insure a continuous management along lines I here set forth, and Deed of Trust Members hereby agree to carry out until all of my estate has been settled or divided according to the general terms of my suggestions, wherein feasible, always operating under the rules of sound business practice, Christian precepts, unitedly so far as possible, otherwise the majority ruling, or singly in the event of incapacity of two of the triumvirate who are unable to act. This is a management trust set out to perform specified duties, to manage such properties according to the desires of this trust in any manner it chooses through its entire life. All have agreed to fulfill the desires of Ben E. Watkins, deponee insofar as is possible and reasonable; the Deed of Trust itself is the final judge in all matters, *Firstly and in the main, all the members of my family and some specially mentioned friends are to receive special gifts as follows:*

Margaret Ann, Rachael and Hazel Virginia had been given paid-up $10,000.00 Life Insurance Policies, probably in R. W. Watkins, Jr., safety deposit boxes, Jackson American Bank of (unintelligible) Richard W. Watkins, Jr. and Elizabeth Wikes wife are to receive $25.00 each. Robert Bryans Watkins and his wife Gertrude are to receive $25.00 each. In lieu of paid-up life insurance policies as issued to Richards three children, is to go to Bob and Gertrude Watkin's six children namely: Donna Ann, Barbara Lynn, Robert B. Watkins, Jr., Hugh Wright, Carolyn and Angela the amount of $20,000.00 to be used by the parents according to their desire. To my brother R. Wright Watkins, Sr. and his wife Floreid are to receive $25.00 each; my sisters Myrtis Delia and Georgie Irene are to receive $25.00 each. As a solute to friends in the Jackson Presbyterian Church, U. S. $125.00 is to be given to Reverend David Black. To the other two members of this deed of Trust, largely a partial expense coverage is to be given $1,000.00 each to Mr. Boykin and to Mr. Niblack (as this is really a largely donated work-trust rather than a money-maker for participants. It is really labors of love donated to vital managements of the Lords Business. Ben E. Watkin's living expenses are to come out of proceeds of this Estate, the returns from Government pension will likely defray most of his living expense.

The proceeds of remaining holdings, stocks, bonds, real estate, and personal

property such as automobile, organ, etc. are to be used for the general benefit, support, classes, new developments and operation of Christian activity including those sponsored by El Paso Bible Church 2901 N. Campbell Street, El Paso, Texas 79902, in operations chosen by Church bodies and by this Deed of Trust (here following, two lines of words were crossed out).

The development of Church Life and activities is very much the concern of this Deed of Trust./ . . . (here followed a discourse by the writer on his religious beliefs).

The deponee here by designates Mr. Boykin and Mr. Niblack, mentioned above, to act in my behalf with power of attorney, to transact any and all business including issuance and signature of checks, access to safety deposit box and other necessary business activities including the responsibility to arrange (the provisions of the instrument appear to end at this point. It is noted that this last paragraph did not appear to be in the handwriting of the Deceased.)'

/s/ Benjamin Edmund Watkins"

■ Appellants' first assignment of error is that the instrument should not have been admitted to probate because the instrument itself and the circumstances surrounding its preparation demonstrate a lack of testamentary intent. Testamentary intent is one of the characteristics of a will and an instrument is not a will unless it is executed with testamentary intent; *Hinson v. Hinson*, 154 Tex. 561, 280 S.W.2d 731 (1955), and an instrument is not admissible for probate unless there is testamentary intent. *Cravens v. Chick*, 524 S.W.2d 425 (Tex.Civ. App.—Fort Worth), writ ref'd n. r. e., 531 S.W.2d 319 (Tex.1975).

■ As the Supreme Court has noted in the recent case of *Welch v. Straach*, 531 S.W.2d 319 (1975), all rules of construction pertaining to wills have been worked out by courts to ascertain the testator's intention and before this intention, all such rules fall, and the intent of the testator must likewise be determined from such instrument.

*Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960); *Utay v. Urbish*, 433 S.W.2d 905 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Considering the entire instrument, we are of the opinion that it was executed with testamentary intent.

■ The dominant purpose of a will is the disposition of property; clearly, that is what this instrument does; and, it provides for the disposition of the list of property after the author's demise. Appellants concede that that appears to be true, but they urge the rule that a writing is not testamentary if its effect is to transfer a present interest in property. 61 Tex.Jur.2d Wills § 6, at 6; *Utay v. Urbish*, supra; *Huffman v. Huffman*, supra. Appellants point to that portion of the instrument which provides for the continuous management of the properties "in the event of my demise or incapacity." Appellants underscore incapacity (even as Appellees underscore demise) as a provision which makes use of the property to provide services during the lifetime of the deceased. Yet, we observe that in the disposition of the property, the instrument does not make a present transfer of it. In disposing of property, it speaks in future terms: "are to receive" and "is to be given."

Another provision pointed to by Appellants is: "Ben E. Watkin's living expenses are to come out of proceeds of this Estate, the returns from Government pension will likely defray most of his living expense." The instrument considered as a whole shows testamentary intent and this paragraph must yield to the whole. As the Supreme Court said in *Welch v. Straach*, supra:

"This Court said in *McMurray v. Stanley*, 69 Tex. 227, 6 S.W. 412 (1887);

'In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to

the intention manifested by the whole instrument.' "

Although we know of no precedent for it, we think some intent can be gleaned from the tenor of the instrument. The religious tenor of the instrument, as distinguished from one written in the business sense, indicates a disposition of property in contemplation of death rather than a present business transaction.

Some two months after the execution of the instrument in question, the deceased executed a trust agreement which had been drawn by an attorney and provided for his care during his lifetime, and upon his death, the property to go in much the same manner and to the same people as this instrument. The trust never came into being as the deceased's death occurred before the property was ever transferred into the trust. Since the instrument was executed some two months after the instrument in question, we do not consider it as being a part of the surrounding circumstances; we adhere to the rule that testamentary intent must be found in the instrument offered for probate. As to the use of the words "deed of trust" in the instrument, we quote from the Supreme Court case of *Welch v. Straach*, supra:

> "This Court has also on a number of occasions considered informal language used by a layman who did not have legal advice in drawing a will. We have said that in such instances the Court will not construe lay language technically but will do so liberally in the endeavor to arrive at the intent of the testator."

■ Section 59, Texas Probate Code, provides for the admission into probate of holographic wills "wholly in the handwriting of the testator." The last paragraph of page three of the instrument in question is not in the handwriting of the deceased, Ben E. Watkins; therefore, Appellants urge that the Court erred in admitting the document to probate. We are unable to agree with this contention for the reason that the Court did not admit into probate the paragraph which was not in the deceased's handwriting, and that portion that was admitted into probate was complete within itself as a will. That portion which was admitted into probate as a will was "wholly in the handwriting of the testator." That distinguishes this case from cases in which partially typed or partially printed instruments were offered in their entirety and were refused. *Dean v. Dickey*, 225 S.W.2d 999 (Tex.Civ.App.—El Paso 1949, writ ref'd); *Scott v. Schwartz*, 469 S.W.2d 587 (Tex.Civ.App.—San Antonio 1971, writ ref'd n. r. e.); *Gunn v. Phillips*, 410 S.W.2d 202 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). Those cases relied upon by Appellants are not in point. More in point and controlling here are such cases as *Maul v. Williams*, 69 S.W.2d 1107 (Tex.Com.App. 1934). There, a holographic will was given effect notwithstanding certain words were not in the maker's handwriting but those words were not necessary to complete the instrument, did not affect its meaning; the Commission of Appeals said, "In this connection we hold that a testamentary instrument intended by the testator as a holographic will should be given effect as such, although it contains words not in the handwriting of the testator, if such words are not necessary to complete the instrument in holographic form, and do not affect its meaning." The same holding was made in *Kramer v. Crout*, 279 S.W.2d 932 (Tex.Civ. App.—Waco 1955, writ ref'd n. r. e.). Under authority of such cases, the Appellants' second point of error is overruled.

The judgment of the trial Court is affirmed.