William A. PATTERSON et al.

v.

UNITED STATES of America.

Civ. A. No. 3–78–0980–G.

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 31, 1979.

Vinson & Elkins by John G. Heard, Glen A. Rosenbaum, Houston, Tex., John B. McAdams, Fort Worth, Tex., for plaintiffs.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Martha Joe Stroud, Asst. U. S. Atty., Wm. W. Guild, Tax Atty., Dallas, Tex., Howard A. Weinberger, Tax Div., Rick Disney, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

This is an action for refund of estate taxes, brought by all the beneficiaries under the will of Mary Elizabeth Patterson.[1] The United States has moved for partial summary judgment as to that portion of the complaint and claim for refund dealing with the determination by the Internal Revenue Service that Mrs. Patterson possessed a general power of appointment at her death.[2]

Mary Elizabeth Patterson, who died in 1972, was a beneficiary under the will of her husband, J. W. Patterson, who died in 1962. The relevant portions of the will of Mr. Patterson are set forth in the margin.[3] Briefly stated, the will bequeathes all of Mr. Patterson's property to his wife for her

---

1. Jurisdiction is based on 28 U.S.C. § 1346(a)(1).

2. Three adjustments were made to the reported taxable estate in arriving at the deficiency challenged in this action. The issues raised by two of these adjustments, involving questions of real estate valuation and ownership of stocks and bonds, are not encompassed in the present motion and will be the subject of proof and determination at trial.

3.                    "2.

   "After the payment of [my just debts] I give and bequeath all of my property of every kind

lifetime, with power to sell, convey, or encumber any or all property and to receive, use, and appropriate the proceeds thereof. On Mrs. Patterson's death, any property "then remaining undisposed of" is to pass to the children of Mr. Patterson. Mrs. Patterson and her son, William Patterson, are appointed joint independent executors. The will specifies that the joint action of the executors shall be necessary during their lifetime.

The problem before the court may be stated simply: Did paragraph two of Mr. Patterson's will give Mrs. Patterson a general power of appointment within the meaning of I.R.C. § 2041? The answer to this question in turn depends on whether paragraph four of the will, appointing co-executors and requiring their joint action, required Mrs. Patterson, the life tenant, to obtain William Patterson's consent before she could sell, convey, or encumber any of the property in her husband's estate. Plaintiffs maintain that the will required such consent, while the United States argues that it did not. All parties concede that if consent was required, the property in Mr. Patterson's estate is not properly includable in the gross estate of Mrs. Patterson, and, conversely, that if consent was not required, the property is properly includable.[4]

Under Texas law, the starting point in a will construction case is the interpretation of the document itself. Indeed, if the testator's intention can be determined from the language contained therein, the four corners of the document represent the ending point of the inquiry as well. In *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960), the Supreme Court of Texas, quoting with approval from 4 Page on Wills § 1617, stated:

In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express apart from the language used, but what the words he has used do express. Accordingly, when there is no dispute as to what words were written in the will, it is a fundamental principle that extrinsic evidence cannot be received to show that the testator intended something outside of, and independent of such written words, to add words to those in the will, to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances was not contemplated by him. The only purpose and justification of the admission of extrinsic evidence is to explain testator's meaning which is set forth in the words of the will. Assuming that there is a valid will to be construed,

---

and character whatsoever to my beloved wife, Mary Elizabeth Patterson, for and during her natural life, with the right, however, in her to sell, convey or encumber any or all of said property, and to receive, use and appropriate the proceeds thereof.

"3.

"After the death of my wife I give and bequeath any and all balance of my property of every kind and character whatsoever then remaining undisposed of to my children, John Patterson, William Patterson, Joe Patterson, Ann Patterson, Dorothy Patterson and Sue Hawkins, the wife of Edwin Hawkins, share and share alike.

"4.

"I hereby appoint my wife, Mary Elizabeth Patterson, and my son, William Patterson, joint independent executors of my will, and direct that no bond shall be required of them, and that no other action shall be had in the County Court in relation to the settlement of my estate than the probating and recording of this my

will, and the return of statutory inventory, appraisement and list of claims of said estate, and of all claims due or owing to me at the time of my death. During the life time of said executors, their joint action shall be necessary, but upon the death of either of them, the survivor shall be entitled to act alone."

4. If exercisable by Mrs. Patterson alone, the power to convey would constitute a general power of appointment under I.R.C. § 2041. 26 C.F.R. § 20.2041–3(b); *Jenkins v. United States*, 428 F.2d 538 (5th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970). If, on the other hand, the consent of William Patterson, a remainderman under clause three of J. W. Patterson's will and hence a "person having a substantial interest in the property," *see* I.R.C. § 2041(b)(1)(C)(ii), is required, the power to convey would not constitute a general power of appointment. 26 C.F.R. § 20.2041–3(c)(2).

it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions.

339 S.W.2d at 888.

The language used in the will of J. W. Patterson is plain and unambiguous. It confers powers and responsibilities on Mary Elizabeth Patterson in two capacities. Her status and powers as a life tenant are derived from and defined by the second paragraph of the will; her status and powers as an executrix are derived from and defined by the fourth paragraph. In her capacity as life tenant, she had complete and unrestricted authority to dispose of the property bequeathed to her. In her capacity as co-executrix, she was limited by the provision of paragraph four of the will requiring the concurrence of the co-executor during their joint lifetime.[5] As executors Mrs. Patterson and her son had certain duties, including the duty to pay and collect the estate's debts, to prepare and file tax returns, to bring suit on behalf of the estate if needed and to defend suits brought against the estate, and to distribute the estate's assets. See Tex. Probate Code § 146. While Texas law requires the executors to deliver the property of the estate to the devisees after the affairs of the estate have been settled, Freeman v. Banks, 91 S.W.2d 1078 (Tex.Civ. App.—Fort Worth 1936, writ ref'd), it is possible that the period of estate administration may be protracted. Hence the requirement for consent of the co-executors during their joint lifetime represents a reasonable precaution on the part of the testator. It follows that the restriction of Mrs. Patterson's power as executrix in paragraph four presents no inconsistency with her unrestricted power as a life tenant. That is, there is no inconsistency in the testator's dispositive plan internal to the will.

This construction of the will gives effect to each paragraph, and construes its provisions in harmony with each other. See Roberts v. Drake, 380 S.W.2d 657, 659–60 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); Jackson v. Evans, 305 S.W.2d 236, 240 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.). In Dougherty v. Humphrey, 424 S.W.2d 617 (Tex.1968), the Supreme Court of Texas refused to construe a paragraph appointing a co-executor as enlarging the estate of a beneficiary/executrix, stating: "One would not expect to find in a paragraph, which provides in part for a co-executor, a sentence that would vitiate the general scheme of the entire will." 424 S.W.2d at 620. The reasoning of the court applies equally to a construction which would restrict the scope of the estate granted to the co-executrix.

Plaintiffs argue that the language of the will must be construed as creating a testamentary trust, with the co-executors as co-trustees, Mrs. Patterson as life beneficiary, and the children as beneficiaries of the corpus on Mrs. Patterson's death. The power to invade and consume corpus would then constitute a joint discretionary power in both trustees, exercisable in a fiduciary capacity, to distribute corpus to the life beneficiary. As such, it would not constitute a general power of appointment. 26 C.F.R. § 2041–3(c)(2). It is true that there is no set semantical formulation essential to the creation of a trust. But this judicial willingness to deal with reality even when inartfully but plainly present does not create a trust when the will contains no language even remotely suggesting that the property is to be held in trust or that the power of invasion is exercisable only in a fiduciary capacity.[6]

---

5. That the consent of William Patterson was required only for actions taken in Mrs. Patterson's capacity as executrix is indicated not only by the placement within the will of the clause requiring William's consent, but also by the language used: "During the life of said executors, their joint consent shall be required, . . . ." (Emphasis supplied)

6. The cases cited by plaintiffs in which a testamentary trust was found despite the absence of language expressly creating such a trust are distinguishable from the present situation. In each of those cases, the will contained language specifically giving rise to the inference that a trust was intended. See Estes v. Estes, 267 S.W. 709 (Tex.Com.App.1924, jdgmt adopt-

Plaintiffs have presented as a part of their opposition to the motion for partial summary judgment the affidavit of John G. Patterson. This affidavit, to be considered if the court finds the language of the will ambiguous, purports to explain the alleged requirement that the co-executor consent to transfers of property in terms of the testator's concern over Mrs. Patterson's lack of business experience and susceptibility to overreaching by her brothers.[7] Plaintiffs thus argue that a genuine issue of material fact is presented as to the testator's intent, precluding summary judgment. While it does not form the basis of this order, it must be recognized that a strong argument can be made that a genuine issue of material fact is not presented even if the will is regarded as ambiguous. Texas law is clear that "an express bequest or devise cannot be cut down by a subsequent clause of doubtful meaning and an estate granted in plain and unequivocal language in one clause of a will therefore cannot be lessened or cut down by a subsequent clause, unless the language therein is as clear, plain and unequivocal as that in the first grant." *Winston v. Griffith,* 108 S.W.2d 745, 749 (Tex.Civ.App.—Fort Worth 1937), *aff'd,* 133 Tex. 348, 128 S.W.2d 25 (1939); *Gilliam v. Mahon,* 231 S.W. 712, 713 (Tex.Com.App. 1921, jdgmt adopted); *Phillips v. Currie,* 246 S.W.2d 257, 258–59 (Tex.Civ.App.— Eastland 1952, no writ); *Killough v. Shafer,* 358 S.W.2d 748 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e.); *Darragh v. Barmore,* 242 S.W. 714 (Tex.Com.App.1922, jdgmt adopted); *Roberts v. Drake, supra.*[8]

The motion of the defendant for partial summary judgment is hereby GRANTED.

---

7. The affidavit also refers to the understanding of Mary Elizabeth Patterson during her lifetime that consent of William was a prerequisite to transfer, and to the practice of local title companies in requiring William's signature on deeds of the property.

8. While these cases do not deal specifically with the question of admissibility of extrinsic evidence to explain an ambiguous later clause which cuts back the grant of an earlier unam-biguous clause, they do indicate that the court need not approach the task of reconciling the provisions unless the later provision is sufficiently explicit. *Gilliam v. Mahon, supra.* "The theory is that where a testator positively makes a certain devise or bequest there can be no intent in his mind to take it [a]way or cut it down." *Gay v. City of Fort Worth,* 4 S.W.2d 268, 272 (Tex.Civ.App.—Fort Worth 1928, writ dism'd), *quoting* Shouler on Wills ¶ 900 (6th ed. 1926). Hence even if the court were disposed to find paragraph four of the will ambiguous, such ambiguous language arguably would be insufficient as a matter of law to create the contradiction between paragraphs two and four which would be necessary to permit the introduction of extrinsic evidence to reconcile the two provisions. Thus no fact issue precluding summary judgment would be created.

ed) (husband shall hold for support and education of himself and son); *Gonzalez v. Gonzalez,* 457 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.) (children may demand shares from executor at age 21); *Covey v. Knight,* 215 S.W.2d 684 (Tex.Civ.App.—Amarillo 1948, writ ref'd n. r. e.) (to daughters for "use and benefit" of their natural heirs). No such intent is inferable here.