urban 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-128-CV




ELIZABETH URBAN,



 APPELLANT


vs.





KATHLEEN E. VIESCA, GUARDIAN OF THE ESTATE OF


MARY LOU HEEP HENDERSON,



 APPELLEE



 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY,



NO. 52,218, HONORABLE GUY HERMAN, JUDGE PRESIDING



 




 Kathleen E. Viesca, guardian of the estate of Mary Lou Heep Henderson, appellee,
sued Elizabeth Urban, appellant, Austin Trust Company, and others (1) seeking a declaratory
judgment to construe certain testamentary trust provisions in the will of Herman F. Heep. After
a non-jury trial, the court rendered judgment construing the will as Viesca requested. Only Urban
appeals this judgment. We will affirm.



FACTUAL AND PROCEDURAL BACKGROUND


 Herman F. Heep died on February 10, 1960. His will, dated October 27, 1959,
was thereafter admitted to probate. Heep's will established two trusts for his daughter, Mary Lou
Heep Henderson, and her issue.

 In 1992, Viesca sued the current trustee of the two trusts, Austin Trust Company,
for breach of fiduciary duties and for declaratory judgment seeking construction of the will. 
Henderson's children and grandchildren were also named as defendants. Urban is Henderson's
daughter. The trial court severed and abated the suit for breach of fiduciary duty pending
resolution of the suit for declaratory judgment.

 The trial on the declaratory judgment suit was to the court. All parties to the suit
stipulated, and the trial court agreed, that Heep's will was unambiguous and should be construed
from its four corners. Therefore, the parties did not offer extrinsic evidence to aid the trial
court's construction. The judgment declared, among other things, the standard the trustee should
use in making distributions to Henderson. Urban appeals only this portion of the judgment.

 The dispute centers around paragraph 4 of Heep's will, which reads as follows:



4. Trust Distributions: During the life of my daughter, the Trustees shall
distribute to my daughter such amounts of the Trust Estates of "THE
HERMAN F. HEEP TRUST NO. 1" and "THE HERMAN F. HEEP TRUST
NO. 2" as are sufficient to provide for her support and maintenance in a
standard of living equivalent to that to which she was accustomed at my death,
taking into consideration any other sources of support she may have from
other sources to the knowledge of the Trustees. Distributions to my daughter
shall be made equally from such Trust Estates unless, in the sole discretion of
the Trustees, it would be more equitable to make such distributions in some
other proportions, in which case such distributions shall be made in the
proportions determined by the Trustees. After any distributions to be made
to my daughter at that time have been made, the income, if any, remaining in
such Trust Estates (and after the death of my daughter, the income of the Trust
Estate of each Trust continued as described in Paragraphs 2 and 3) may be
accumulated and retained, in whole or in part, or the Trustees, from time to
time, may distribute to the following persons such amounts of the following
Trust Estates as, in the sole discretion of the Trustees, are in the best interests
of such distributees:


 (a) In the case of "THE HERMAN F. HEEP TRUST NO. 1" and "THE
HERMAN F. HEEP TRUST NO. 2", to any one or more of the issue
of my daughter.


 (b) In the case of a separate and distinct Trust continued as described
in Paragraphs 2 and 3, to any one or more of the person for whom
such Trust was continued and such person's issue.


In making distributions to persons other than my daughter, the Trustees shall take
into consideration the age of the distributee, the costs of a distributee's comfort,
support, maintenance, and education, any income a distributee may have from
other sources to the knowledge of the Trustees, and any other factors deemed
relevant by the Trustees. Such distributions may be made without regard to any
requirement of equality among distributees or to the fact that any ancestor of a
distributee is then living or receiving distributions hereunder. Distributions of
corpus and accumulated income, but not of current income, made under the
provisions of this paragraph shall be subtracted, without interest, from the share,
if any, of the recipient (or the persons taking in such recipient's place by right of
representation) upon final distribution of the Trust Estate from which such
distributions were made unless such person is the only one then entitled to share
in such Trust Estate.



(Emphasis added.) The trial court construed the language of the will emphasized above to mean
that in making trust distributions to Mary Lou Heep Henderson for the purpose of her support and
maintenance, the trustee may only consider "other payments Mary Lou Heep Henderson actually
receives for the same purpose (i.e., her support and maintenance) . . . ."



DISCUSSION


 Urban brings two points of error complaining of the trial court's judgment. In her
first point of error, she complains that the construction of the distribution standard is contrary to
Heep's intent and that the evidence is legally or factually insufficient to support the findings of
fact and conclusions of law made by the trial court regarding the "sources of support" issue. In
her second point of error, Urban complains that the trial court erred in finding that the trustee
should not consider the estate-tax consequences of a trust distribution, particularly that the trustee
should not consider the value of Henderson's estate, when determining whether to make a
distribution to a beneficiary. Urban contends that this construction is contrary to Heep's intent
and that the evidence is factually or legally insufficient to support the conclusions of law made by
the trial court.

 Before discussing the substantive issues presented by Urban, we must address the
appropriateness of her points of error challenging the sufficiency of the evidence. Whether a will
is ambiguous is a question of law for the court. Nail v. Thompson, 806 S.W.2d 599, 601 (Tex.
App.Fort Worth 1991, no writ). When a will is unambiguous, its proper construction is likewise
a question of law for the court. Floyd v. Floyd, 813 S.W.2d 758, 760 (Tex. App.El Paso 1991,
writ denied); see also El Paso Nat'l Bank v. Shriners Hosp. for Crippled Children, 615 S.W.2d
184, 185-86 (Tex. 1981). Urban's points of error complain of the construction of an
unambiguous will. Therefore, only questions of law are presented on appeal.

 Conclusions of law are reviewable when attacked as erroneous as a matter of law,
but not when attacked on grounds of sufficiency of the evidence to support them, as if they were
findings of fact. First Nat'l Bank v. Kinabrew, 589 S.W.2d 137, 146 (Tex. Civ. App.Tyler
1979, writ ref'd n.r.e.); Little v. Linder, 651 S.W.2d 895, 898 (Tex. App.Tyler 1983, writ ref'd
n.r.e.). Therefore, to the extent that Urban's points of error can be read as challenging the trial
court's construction of Heep's will on the grounds of legal or factual sufficiency of the evidence,
they are overruled. (2)

 We believe, however, that Urban's points of error, read liberally, can also be
interpreted as challenging the trial court's construction of Heep's will as being erroneous as a
matter of law. Therefore, we will review the trial court's construction of the will.

 In construing an unambiguous will, we examine the four corners of the instrument
to determine the testator's intent. Henderson v. Parker, 728 S.W.2d 768, 770 (Tex. 1987); El
Paso Nat'l Bank, 615 S.W.2d at 185. Our objective is not to determine what the testator meant
to write, but rather to discern the meaning of the words that he actually used. Shriner's Hosp.
for Crippled Children v. Stahl, 610 S.W.2d 147, 151 (Tex. 1980). Where the meaning of those
words is clear, we will not speculate that some other result may have been intended. Price v.
Austin Nat'l Bank, 522 S.W.2d 725, 731 (Tex. Civ. App.Austin 1975, writ ref'd n.r.e.). The
testator's intent must be drawn from the will, not the will from his intent. Huffman v. Huffman,
339 S.W.2d 885, 888 (Tex. 1960).

 We presume that the testator placed nothing superfluous or meaningless in his will,
and that he intended every word to have a meaning. Johnson v. McLaughlin, 840 S.W.2d 668,
672 (Tex. App.Austin 1992, no writ). We also presume that the same word used more than
once in a will was intended to have the same meaning throughout. Weathers v. Robertson, 331
S.W.2d 87, 90 (Tex. Civ. App.Beaumont 1959, writ ref'd n.r.e.). Words of common usage are
given their usual and ordinary meaning absent a clear intention to use them otherwise. White v.
Taylor, 286 S.W.2d 925, 926 (Tex. 1956); Silverthorn v. Jennings, 620 S.W.2d 894, 897 (Tex.
Civ. App.Amarillo 1981, writ ref'd n.r.e.).

 In her first point of error, Urban challenges the trial court's construction of the
phrase, "taking into consideration any other sources of support she may have from other sources." 
The trial court concluded that this phrase meant that, before making trust distributions to
Henderson, the trustee is obligated and permitted to consider any other payments Henderson
actually receives for her support and maintenance from any other person or entity. The trial court
further concluded that the trustee was not authorized to consider other income from Henderson's
estate, the fair market value of her estate, or the fair market value of another trust of which she
is beneficiary, except to the extent that she elects to use those sources for her support or her
guardian is ordered by the Probate Court to use them for her support. The court also concluded
that other factors set out in Heep's will to be considered for distributions to other beneficiaries
are not to be considered in determining distributions to Henderson.

 We agree with the trial court's construction of the will. We construe Heep's will
to mean that the trustee should consider any other sources of support that Henderson has other
than the two trusts established under the will. To "support" means to maintain. Webster's Third
New International Dictionary 2297 (1986). We believe Heep intended to maintain Henderson's
lifestyle; that is, Heep did not intend that Henderson be forced to expend her own estate for
support. For example, Heep directed that the trustee consider Henderson's other sources of
"support," while directing the trustee to consider other beneficiaries' sources of "income" in
making distributions. Heep did not intend for the terms "income" and "support" to be
synonymous, but rather, to have different meanings. "Income" is the broader of the two terms: 
it can be used for support, but it can also be used for other purposes. We believe that Heep
recognized this and intended only those assets that were intended to be used or were actually used
for Henderson's support to be considered by the trustee in making distributions to her. We
overrule Urban's first point of error. (3)

 Urban's second point of error complains of the trial court's determination that the
trustee could not consider the estate-tax consequences of making distributions to Henderson. 
Urban asserts that Heep's intent was to minimize his estate taxes. We agree that this was Heep's
intent. However, the will directs the trustee to consider only "other sources of support" in making
distributions to Henderson. We may not redraft a will, nor vary or add provisions to it, under
the guise of construing its language to reflect some presumed intention of the testator. Shriner's
Hosp., 610 S.W.2d at 151. There is nothing in the language of Heep's will to support the
trustee's consideration of the estate-tax consequences of a distribution to Henderson.

 Furthermore, although Heep intended to minimize estate taxes on his estate,
Urban's proposed construction is aimed at minimizing Henderson's estate taxes. Any distributions
to Henderson from the trusts are to be used for her support and maintenance. It may be
presumed, therefore, that such distributions will be expended and will not remain permanently in
her estate. We recognize that the distributions to Henderson may have the indirect effect of
increasing her estate, because her own assets will not be consumed for her support. However,
we do not believe this effect is contrary to Heep's intent. Rather, we believe Heep intended to
avoid having assets in his estate taxed and then having those same assets taxed as part of
Henderson's estate. We overrule Urban's second point of error.



CONCLUSION


 We affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: November 24, 1993

Do Not Publish

1.   In addition to Austin Trust Company, the defendants included Elizabeth Urban,
Kathleen Henderson, and Harriet Heep, daughters of Mary Lou Heep Henderson, as well
as nine adult and minor grandchildren of Mary Lou Heep Henderson.
2.   We recognize that the trial court necessarily draws its conclusions of law from the
facts as it finds them, and those findings of fact are reviewable for legal and factual
sufficiency of the evidence to support them. Kinabrew, 589 S.W.2d at 146. When
construing an unambiguous will, the trial court draws its conclusions from the words used in
the will. Urban's points of error do not complain that the court based its construction on
words not found in Heep's will, or that Heep intended those words to have other than their
usual and ordinary meaning, but that the trial court's construction of those words actually in
the will, given their usual and ordinary meaning, is erroneous.
3.   The trial court's judgment stating its construction of the will, although phrased
slightly differently, is consistent with our conclusion.