

## NUMBER 13-06-00545-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **MARY LOUISE SWANTNER-CARTER,** | **Appellant,** |
| **v.** | |
| **THE FROST NATIONAL BANK AS SUCCESSOR TRUSTEE, BILLY TOSHEFF, MICHELLE EMURA, STEVE TOSHEFF, AND ALEX TOSHEFF,** | **Appellees.** |

### On appeal from the 148th District Court of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Garza

Appellant, Mary Louise Swantner-Carter ("Carter"), challenges the trial court's denial of her request to modify or terminate the testamentary trust established by her father, George Robert Swantner ("Swantner"). *See* TEX. PROP. CODE ANN. § 112.054 (Vernon 2007) (providing for judicial modification or termination of trusts). By three issues, Carter contends that: (1) the trial court erred by failing to find controlling facts and make

necessary conclusions of law; (2) the trial court's denial of her request to modify or terminate the trust was error; and (3) the evidence was legally insufficient to support the trial court's findings and conclusions. We affirm.

## I. BACKGROUND

By his will dated November 8, 1966, Swantner left a one-quarter interest of his estate in a spendthrift trust for his daughter, Carter, with a remaining interest in Carter's heirs. Swantner also left one-quarter interests in his estate to two of his sons outright and to his third son in a separate, more liberal trust. Swantner appointed Guaranty National Bank and Trust ("Guaranty") as independent executor of his will and as trustee for Carter's trust. According to the will, Carter was to receive $600 per month from the trust principal. The trust instrument also contained spendthrift provisions, protecting the trust from liability for Carter's debts. By a codicil dated July 25, 1974, Swantner designated a tract of land to vest in fee simple to Carter. Swantner died in 1978.

In 1981, Carter, suffering from physical and mental health problems, filed suit against Citizens State Bank ("Citizens"), which succeeded Guaranty as trustee, seeking modification of the trust to provide her with additional funds. On December 14, 1981, the trial court rendered an order modifying the trust terms to provide that Carter could be paid a maximum of $3,000 per month, which would be indexed to inflation. The court specifically ordered that these monthly distributions would be paid for Carter's "maintenance, support, medical care and hospitalization" and would be made exclusively from the net income of the trust. However, since the district court's modification, the trust has not consistently generated $3,000 in monthly income. Presently, the approximately $466,500 in trust assets generate around $2,000 per month in interest, which is distributed entirely to Carter.

Contending that the trust income failed to meet her maintenance and medical care

2

needs, Carter filed suit on September 27, 2004, seeking a further modification or termination of the trust. Specifically, Carter sought a declaration permitting Frost National Bank ("Frost"), which succeeded Citizens as trustee, to pay Carter up to the $3,000 maximum amount out of the trust principal as well as the trust income. Carter named Frost and her four children, William M. Tosheff, II, Michelle L. Emura, Stephen D. Tosheff, and George A. Tosheff (collectively "the Tosheffs") as defendants in the suit. The Tosheffs, who stand to inherit the trust principal upon Swantner's death as remainder beneficiaries, opposed allowing their mother to receive funds out of the trust principal.

In her first amended petition filed on January 5, 2005, Carter specified the grounds on which she based her request for modification, stating: "The beneficiary's [Carter's] circumstances was [sic] not, and could not have been anticipated when the trust was created, and her current medical and psychological needs substantially impair the accomplishment of the purposes of the trust." *See id.* § 112.054(a)(1), (2). After a bench trial, the trial court rendered judgment on June 15, 2006, denying Carter's petition and reaffirming the modification made by the court in 1981.

Carter filed a request for findings of fact and conclusions of law on June 19, 2006. On July 11, 2006, Carter filed a notice of past due findings of fact and conclusions of law, and a motion for new trial alleging that the court's judgment failed to follow the evidence and wrongly applied the law, and requesting that the trial court "make the correct legal and moral judgment." The trial court filed findings of fact and conclusions of law on July 12, 2006. Carter then filed a request for additional or amended findings of fact and conclusions of law, and on August 15, 2006, the trial court provided amended findings of fact and conclusions of law. Dissatisfied with the trial court's response, Carter filed a second request for additional or amended findings of fact and conclusions of law on August 16, 2006. The trial court denied the request. This appeal ensued.

3

## II. Discussion

### A. Findings of Fact and Conclusions of Law

By her first issue, Carter alleges that the trial court abused its discretion by failing to make necessary findings of fact and conclusions of law regarding the testator's intent and the actual dollar amount required for Carter's current monthly maintenance, medical care, and hospitalization. Carter further claims that because the trial court declined to make these additional requested findings and conclusions, she has been prevented from properly presenting her case to this Court.

"In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. If a party deems the court's findings and conclusions deficient in some respect, he may request specified additional or amended findings or conclusions. TEX. R. CIV. P. 298. The trial court need only enter findings, or additional findings, on ultimate or controlling issues, rather than on mere evidentiary issues. *Flanary v. Mills*, 150 S.W.3d 785, 793 (Tex. App.–Austin 2004, pet denied) (citing *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 515 (Tex. App.–San Antonio 2001, pet. denied)).

An ultimate fact issue is one that is essential to the cause of action and would have a direct effect on the judgment. *Id.* (citing *Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632, 639 (Tex. App.–Houston [1st Dist.] 1985, writ ref'd n.r.e.)). An evidentiary issue is one the trial court may consider in deciding the controlling issue, but is not a controlling issue itself. *Id.* at 793-94. When a party makes a proper and timely request for findings under rule 296 and the trial court fails to comply, harm to the complaining party is presumed unless the contrary appears on the face of the record. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Moreover, harm will be found if an error prevents an appellant from properly presenting its case to the appellate court. *Id.*; *see* TEX. R. APP. P. 44.1(a)(2).

Carter contends that her father's original intent and the actual dollar amount

4

required for her maintenance are "ultimate or controlling issues" and, therefore, that the trial court's failure to make additional findings and conclusions was error. We disagree. The only issue before the trial court was whether to modify or terminate the trust pursuant to section 112.054(a) of the property code, which provides in relevant part as follows:

> (a) On the petition of a trustee or a beneficiary, a court may order that the trustee be changed, that the terms of the trust be modified, that the trustee be directed or permitted to do acts that are not authorized or that are forbidden by the terms of the trust, that the trustee be prohibited from performing acts required by the terms of the trust, or that the trust be terminated in whole or in part, if:
>
> (1)      the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill; [or]
>
> (2)      because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust . . .

TEX. PROP. CODE ANN. § 112.054(a). Moreover, section 112.054(b) provides that, although "[t]he court shall exercise its discretion to order a modification or termination under Subsection (a) in the manner that conforms as nearly as possible to the probable intention of the settlor," the court "is not precluded from exercising its discretion to modify or terminate solely because the trust is a spendthrift trust." *Id.* § 112.054(b).[1]

Therefore, while the "probable intention of the settlor" is an important consideration in determining whether to modify or terminate a trust, it is not necessary or controlling to the disposition of the case. Rather, the only findings "essential to the cause of action" were those pertaining to the conditions outlined in sections 112.054(a)(1) and (2) of the property code; that is, whether "the purposes of the trust have been fulfilled or have become illegal

---

[1] Section 112.035 of the Texas Property Code, entitled "Spendthrift Trusts," provides in relevant part the following:

> (a) A settlor may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.
>
> (b) A declaration in a trust instrument that the interest of a beneficiary shall be held subject to a "spendthrift trust" is sufficient to restrain voluntary or involuntary alienation of the interest by a beneficiary to the maximum extent permitted by this subtitle.

TEX. PROP. CODE ANN. § 112.035(a), (b) (Vernon Supp. 2007).

5

or impossible to fulfill" or whether "because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust." *See id.* § 112.054(a)(1), (2). The trial court specifically stated in its amended findings of fact that "[t]he purposes of the Trust are being fulfilled and have not become illegal or impossible to fulfill" and that "[t]here are no circumstances not known to or anticipated by George Robert Swantner, relating to his daughter, Plaintiff Mary Louise Swantner-Carter."

We conclude that the trial court's specific findings and conclusions with respect to Swantner's original intent and the exact dollar amount necessary for Carter's maintenance were not "essential to the cause of action" and would not have had a "direct effect on the judgment"; therefore, they were not "ultimate or controlling" issues. *See Flanary,* 150 S.W.3d at 793. Accordingly, the decision of the trial court not to issue findings of fact or conclusions of law with respect to those issues was not error. *See id.* We overrule Carter's first issue.

## B.    Modification and Termination of the Trust

By her second issue, Carter claims that the trial court erred in denying her petition to modify or terminate the trust. By her third issue, Carter asserts that the evidence was legally insufficient to support the trial court's findings of fact numbers five and six[2] and conclusions of law numbers one and two.[3] She specifically contends that "overwhelming

---

[2] The trial court's amended findings of fact numbers five and six stated as follows:

(5)    There are no circumstances not known to or anticipated by George Robert Swantner, relating to his daughter, Plaintiff Mary Louise Swantner-Carter.

(6)    The purposes of the Trust are being fulfilled and have not become illegal or impossible to fulfill.

[3] The trial court's amended conclusions of law numbers one and two stated as follows:

(1)    Modification of the Trust created under the Last Will of George Robert Swantner, for his daughter Mary Louise Swantner-Carter, and his grandchildren, Stephen Tosheff, Michelle L. Emura (formerly Michelle L. Tosheff), William M. Tosheff, II, and George Alexander Tosheff, beyond that authorized by this Court's Judgment of December 17, 1981, is not justified under Section 112.054, Texas Property Code or otherwise, and is therefore denied.

(2)    No payments to or for the benefit of Plaintiff Mary Louise Swantner-Carter are authorized beyond the Trust income up to the maximum amount per month as set out in the Judgment of December 17, 1981.

evidence shows that the Trust's purposes are not being fulfilled, that the trust's purposes have become impossible to fulfill, and that circumstances exist today which were not known or anticipated by the testator."

We review a trial court's determination regarding modification or termination of a trust for abuse of discretion. *See* TEX. PROP. CODE ANN. §§ 112.054(a) (stating that "a court may order that the terms of the trust be modified . . ."), 112.054(b) (stating that "the court shall exercise its discretion to order a modification or termination under Subsection (a) . . ."). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 328, 241-42 (Tex. 1985). Under this standard, we may not substitute our own judgment for the trial court's judgment. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Moreover, under an abuse of discretion standard, legal insufficiency of the evidence is not an independent reversible ground of error but is a relevant factor in assessing whether the trial court abused its discretion. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *see also Weingarten Realty Investors v. Harris County Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (op. on reh'g); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.–Fort Worth 2002, pet. denied). We therefore consider Carter's second and third issues, challenging the discretion of the trial court and the sufficiency of the evidence respectively, together.

As noted above, sections 112.054(a)(1) and (2) of the property code permit a court to modify or terminate a trust if "the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill" or if "because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust." *See* TEX. PROP. CODE ANN. § 112.054(a)(1), (2). Swantner alleged that her physical and mental disabilities were not known by her father at the time he formulated his will. She further contended that the purpose of the trust was to provide for her health and maintenance, and that this purpose would be impossible to fulfill if the trustee was limited to making distributions to

7

her out of the net income of the trust.

Carter bore the burden of proof as the petitioner in the trial court seeking judicial modification or termination of the trust. *See id.* When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L.J. 351, 481-82 (1998)). In reviewing a such a challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The issue should be sustained only if the contrary proposition is conclusively established. *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)).

Here, there was ample evidence supporting the trial court's findings. John Swantner, Carter's brother, testified that their father knew Carter well and was concerned about her well-being. George Tosheff testified that Carter has had psychological problems for most of her adult life, including schizophrenia and depression, as well as a history of dependence on prescription drugs. The evidence supported the conclusion that there were no circumstances not known or anticipated by Swantner relating to Carter, and that the purposes of the trust are presently being fulfilled.

In construing the provisions of a trust, the settlor's intent is to be ascertained by looking to the provisions of the instrument as a whole, as set forth within the four corners of the instrument. *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio*, 748 S.W.2d 218, 220 (Tex. 1988) (citing *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971); *Sellers v. Powers*, 426 S.W.2d 533, 536 (Tex. 1968)). Here, the original trust document provided for a spendthrift trust and required the trustee to distribute $600 per month from the trust principal to Carter, without regard to how the funds would be used. The 1981

8

judicial modification increased the maximum amount that could be distributed to Carter to $3,000 per month and mandated that those funds be distributed from the net income of the trust rather than the trust principal. The 1981 judgment also stated that the funds were to be provided for Carter's "maintenance, support, medical care and hospitalization" and that the original spendthrift provisions of the trust were still applicable. Carter urges us to find that the 1981 judgment thereby created in her an entitlement to receive funds from the trust sufficient to compensate her for her medical needs, no matter how much the cost. We decline to do so. A court must not redraft the trust document or add provisions under the guise of construction in order to effectuate some presumed intent of the settlor. *See id.* (citing *Shriner's Hosp. for Crippled Children v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Huffman v. Huffman*, 161 Tex. 267, 273, 339 S.W.2d 885, 888 (1960)).

We find that there was legally sufficient evidence supporting the trial court's findings of fact and conclusions of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. Moreover, we conclude that the trial court did not act arbitrarily or unreasonably or without reference to guiding rules and principles in declining to modify or terminate the trust. Accordingly, the trial court did not abuse its discretion in denying Carter's requested relief. *See Downer*, 701 S.W.2d at 241-42. Carter's second and third issues are overruled.

## III. CONCLUSION

Having overruled Carter's three issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 7th day of August, 2008.

9